*1036
 
 PER CURIAM.
 

 Martin Edward Grossman, a prisoner under sentence of death and under an active death warrant, appeals from the trial court’s order summarily denying his motion to vacate his sentence pursuant to Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from a sentence of death, this Court has jurisdiction over the appeal under article V, section 3(b)(1), of the Florida Constitution. In his successive motion filed after the death warrant was signed, the summary denial of which is the subject of the present appeal, Grossman raised claims that were either previously raised in his postconviction proceedings that concluded in 1997 or repeatedly rejected by this Court as legally without merit. Therefore, as more fully explained in this opinion, we affirm the trial court’s order.
 

 FACTS AND PROCEDURAL HISTORY
 

 In 1985, Martin Grossman was convicted of the 1984 first-degree murder of Wildlife Officer Margaret Park and was sentenced to death on the recommendation of a unanimous jury. This case has a long procedural history. The conviction and death sentence have been reviewed and affirmed on direct appeal and have been the subject of multiple state and federal proceedings.
 
 [1]
 
 The facts of this case are set forth in this Court’s opinion in Grossman’s direct appeal of his conviction and sentence:
 

 Appellant and a companion, Taylor, drove to a wooded area of Pinellas County on the night of December 13, 1984, to shoot a handgun which appellant had recently obtained by burglarizing a home. Appellant lived in neighboring Pasco County at his mother’s home and was on probation following a recent prison term. Wildlife Officer Margaret Park, patrolling the area in her vehicle, came upon the two men and became suspicious. She left her vehicle with the motor, lights, and flashers on, and took possession of appellant’s weapon and driver’s license. Appellant pleaded with her not to turn him in as having a weapon in his possession and being outside of Pasco County would cause him to return to prison for violation of probation. Officer Park refused the plea, opened the driver’s door to her vehicle and picked up the radio microphone to call the sheriffs office. Appellant then grabbed the officer’s large flashlight and struck her repeatedly on the head and shoulders, forcing her upper body into the vehicle. Officer Park reported “I’m hit” over the radio and screamed. Appellant continued the attack, and called for help from Taylor, who joined in the assault. Officer Park managed to draw her weapon, a .357 magnum, and fired a wild shot within the vehicle. Simultaneously, she temporarily disabled Taylor by kicking him in the groin. Appellant, who is a large man, wrestled the officer’s weapon away and fired a fatal shot into the back of her head. The spent slug exited her head in front and fell into a drinking cup inside the vehicle. Blood stains, high velocity splatters, the location of the spent slug, and the entry and exit wounds show that the victim’s upper
 
 *1037
 
 body was inside the vehicle with her face turned inward or downward at the moment she was killed. Appellant and Taylor took back the seized handgun and driver’s license, and fled with the officer’s weapon. They returned to the Grossman home, where they told the story of the killing, individually and collectively, to a friend who lived with the Grossmans. The friend, Brian Hancock, and Taylor buried the two weapons nearby. Appellant, who was covered with blood, attempted unsuccessfully to burn his clothes and shoes which Taylor later disposed of in a nearby lake. Approximately a week later appellant and Taylor, individually and collectively, recounted the story of the murder to another friend, Brian Allan. Approximately eleven days after the murder, Hancock told his story to the police and appellant and Taylor were arrested. Taylor, upon his arrest, recounted the story of the murder to a policeman and, later, appellant told the story to a jailmate, Charles Brewer. Appellant and Taylor were tried jointly over appellant’s objection. At trial, the state introduced the testimony of Hancock, Allan, and Brewer against appellant. The state also introduced Taylor’s statement to the policeman against Taylor only. In addition, the state introduced the charred shoes, the two weapons, prints taken from the victim’s vehicle, testimony from a neighbor who observed the attempted burning of the clothes, appellant’s efforts to clean the Grossman van, and
 

 the changing of the van tires. Expert testimony as to the cause of death and the significance of blood splatter evidence was also introduced by the state. The jury was instructed that Taylor’s admissions to the policeman could only be used against him, not appellant. The jury was instructed on premeditation and felony murder based on robbery, burglary, and escape. A general verdict of first-degree murder was returned against the appellant and Taylor was found guilty of third-degree murder.
 

 Grossman,
 
 525 So.2d at 835-36.
 

 During the penalty phase, defense counsel called four witnesses: (1) Myra Gross-man, Grossman’s mother; (2) Thomas Campbell, a correctional officer overseeing Grossman; (3) Steven Martakas, Gross-man’s friend from junior high school; and (4) Carolyn Middleton, a social worker at the jail housing Grossman. These witnesses testified that Grossman’s father was disabled and that Grossman was often tasked from a very young age with taking care of him. Grossman dropped out of junior high school, and his father died when Grossman was fifteen years old. Grossman respected his parents and was not a violent person. Grossman never exhibited behavioral problems while in jail, and he was very nervous and scared about being executed. Following the penalty phase, the jury unanimously recommended death, and the judge imposed a sentence of death.
 
 Grossman,
 
 525 So.2d at 836.
 
 [2]
 
 This Court affirmed Grossman’s conviction and
 
 *1038
 
 death sentence on direct appeal.
 
 Id.
 
 at 846.
 

 On March 8,1990, before Grossman filed any postconviction motions, Governor Bob Martinez signed a death warrant setting the execution of Grossman for the week of May 10, 1990. Grossman filed a petition for writ of habeas corpus in this Court, and this Court granted a stay of execution to allow Grossman the opportunity to seek postconviction relief.
 
 Grossman,
 
 708 So.2d at 250. Grossman filed a motion to vacate his conviction and sentence under Florida Rule of Criminal Procedure 3.850 in the trial court in August 1990 (“original postconviction motion”) and simultaneously filed an amended habeas petition in this Court.
 
 Id.
 

 In his original postconviction motion, Grossman made numerous claims, but three claims are directly relevant to our determination that the present successive motion includes claims that Grossman has previously raised. First, Grossman argued in claim VI of his original postcon-viction motion that he was denied the effective assistance of counsel during the penalty phase because counsel failed to have Grossman examined by a competent mental health professional as required by
 
 Ake v. Oklahoma,
 
 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The original court-appointed mental health expert for the defense was Dr. Sidney Merin. However, Dr. Merin did not testify during Grossman’s penalty phase proceedings. After his evaluation of Grossman, Dr. Me-rin advised defense counsel that “[his] findings would not be helpful to [the] de-tense position in either the guilt or innocence phase or, if it is held, the sentencing phase of Mr. Grossman’s trial.” In his original postconviction motion, Grossman alleged that a new mental health expert, Dr. Brad Fisher, had evaluated Grossman in March 1990 and had prepared a report that rebutted the contentions of Dr. Me-rin.
 
 [3]
 
 Dr. Fisher’s report indicated that testing did not reveal any signs of “a, current psychotic condition or of any major affective disorder.” However, Dr. Fisher noted that his testing revealed “soft signs of organic impairment,” which was supported by Grossman’s history of “chronic and extensive drug and alcohol dependence,” and that “[f]urther testing would be required to determine the nature and extent of this probable mental disability.” Grossman attached Dr. Fisher’s report to his motion and was prepared to call Dr. Fisher to testify at an evidentiary hearing.
 
 [4]
 
 The trial court summarily denied this claim, and this Court affirmed that denial.
 
 Grossman,
 
 708 So.2d at 252.
 

 Second, Grossman claimed in claim V of his original postconviction motion that counsel was ineffective during the penalty phase for failing to investigate, develop, and present mitigating evidence. Gross-man received an evidentiary hearing on this claim. The only expert offered by the defense at the evidentiary hearing in 1994 was Kevin Sullivan, a licensed clinical social worker. Sullivan testified that Grossman was raised in a dysfunctional environment and that a number of factors negatively impacted his development, including that Grossman had been given in
 
 *1039
 
 appropriate caretaking responsibilities from a young age; that his family had relocated at a critical time in his development; and that he experienced grief at the loss of his father and grandfather.
 

 The trial court denied relief on this claim:
 

 The Defendant has failed to make the required showing of either deficient performance or sufficient prejudice [under
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ] to support his ineffectiveness claim.
 

 The Court has evaluated the conduct of the Defendant’s counsel from counsel’s perspective at the time of the trial. Defendant introduced thirty-three affidavits that were represented as possible mitigation witnesses that were available at the time of trial but were not used by the defense. SeA^eral of the possible witnesses represented by the affidavits were known to the defense, and the defense had determined not to use them.
 

 Defense counsel, Mr. McCoun, at the time of trial, recognized that while trying to present a favorable picture of the Defendant, equally negative things would also be presented. Mr. McCoun did not want to use witnesses who would say that the Defendant was into stealing and heavy drug use. Moreover, defense counsel called three mitigating witnesses in addition to the Defendant’s mother. The mitigating witnesses that were called had close contact with the Defendant near the time that he committed the crime; whereas, many of the potential witnesses that were represented by the affidavits had not seen the Defendant in years.
 

 The Court finds that Mr. McCoun did a competent, effective job of representing the Defendant at all phases of the trial. Even if counsel were deemed ineffective for the reasons stated by the Defendant, such alleged ineffectiveness did not come close to being so prejudicial to the Defendant that it affected the outcome of the case. The facts of this case showed the Defendant’s conduct to be so egregious that proof of mitigating circumstances was extremely difficult.
 

 This Court affirmed the trial court’s denial of this claim.
 
 Grossman,
 
 708 So.2d at 251.
 

 Third, also pertinent to the issues that he now raises, Grossman argued in his original postconviction motion that inmate Charles Brewer, who testified for the State, was acting as a State agent when he procured incriminating information from Grossman, and that the State failed to disclose this fact in violation of
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After an evidentiary hearing, the trial court found:
 

 Defendant states that Charles Brewer, a trusty at the Pinellas County Jail while Defendant was being held there awaiting trial, was a state agent, and the State withheld this fact along with an agreement that Mr. Brewer had reached with prosecutors regarding charges that were pending against Mr. Brewer. Mr. Brewer testified that he had his brother contact law enforcement after he heard Defendant discussing the case. Mr. Brewer said that he talked to the homicide detectives only one time and that was when they took his taped statement.
 

 Detective Robert Rhodes testified that he taped Mr. Brewer’s statement on July 25, 1985, and that was the only time he ever met with Mr. Brewer. The State did not make any deals with Mr. Brewer in exchange for the statement, and Detective Rhodes did not suggest questions for Mr. Brewer to ask the Defendant or ask Mr. Brewer to be an agent for the State.
 

 The State Attorney, Bernie McCabe, testified that he interviewed Mr. Brewer
 
 *1040
 
 at the State Attorney’s Office prior to the trial and that he emphasized to Mr. Brewer that there were no deals in exchange for Mr. Brewer’s testimony. Defendant’s claim that Mr. Brewer was a state agent at the time that he discussed the Peggy Park murder with Defendant and that the State struck a deal with Mr. Brewer in exchange for his testimony is without merit.
 

 The trial court also denied Grossman’s claim that the State violated
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), by presenting the false testimony of Brewer:
 

 Defendant claims that Mr. Brewer provided false testimony about his prior record and about statements that Mr. Brewer attributed to Defendant. It does not appear from the evidence that the State was aware of the alleged falsity of Mr. Brewer’s testimony about his prior record. Defendant states that Mr. Brewer’s testimony concerning statements allegedly made by the Defendant was false; specifically, that the Defendant shot the victim because she was a woman and that if he had shot her in the back of the head it would have blown her face away. State’s Exhibit Number Two is a transcript of Mr. Brewer’s taped interview with Detective Rhodes. Mr. Brewer did not dispute the accuracy of the transcript of the taped interview, and stated that he did not remember at the time of the Rule 3.850 hearing what he had said during the taped interview. Defendant has failed to show how the alleged falsity of this aspect of Mr. Brewer’s testimony affected the conviction or the sentence imposed in this case; therefore, this claim has no merit.
 

 On appeal, this Court found that competent, substantial evidence supported the trial court’s finding as to the
 
 Brady
 
 claim concerning Brewer, but did not specifically address the
 
 Giglio
 
 claim.
 
 Grossman,
 
 708 So.2d at 252.
 

 Grossman later filed an amended federal habeas petition in which he raised,
 
 inter alia,
 
 the same issues concerning witness Brewer and ineffective assistance of counsel during the penalty phase.
 
 Grossman,
 
 359 F.Supp.2d at 1245-47.
 
 [5]
 
 The federal district court denied the habeas petition,
 
 id.,
 
 and the Eleventh Circuit affirmed.
 
 Grossman v. McDonough,
 
 466 F.3d 1325 (11th Cir.2006).
 

 Subsequently, Grossman filed his first and second successive motions for postcon-viction relief, the summary denial of which was affirmed by this Court.
 
 See Gross-man,
 
 932 So.2d 192 (affirming summary denial of Grossmans first successive post-conviction motion);
 
 Grossman,
 
 5 So.3d 668 (affirming summary denial of Grossman’s second successive postconviction motion). None of these successive motions or appeals raised any issues related specifically to either the guilt or penalty phase of Grossman’s trial.
 

 On January 12, 2010, Governor Crist signed a death warrant for Grossman, scheduling his execution for February 16, 2010. Grossman then filed his third successive motion for postconviction relief, raising three claims as set forth below, and the State filed its response. After holding an initial hearing pursuant to Florida Rule of Criminal Procedure 3.851(h)(6) on January 20, 2010, to determine whether an evidentiary hearing should be held on this
 
 *1041
 
 motion, the trial court summarily denied claims one and two, and dismissed claim three.
 

 ANALYSIS
 

 In the present appeal, Grossman argues that the trial court erred in summarily denying his claims that (1) he was denied his constitutional rights because he was not granted an evidentiary hearing on his claim in his original postconviction motion that trial counsel provided ineffective assistance in the penalty phase of Gross-man’s trial by failing to have him examined by a competent mental health professional and newly discovered evidence now supports his ineffective assistance claim; (2) Florida’s death penalty statute is arbitrary and capricious in violation of his constitutional rights because the trial court and jury did not hear all of his available mitigating evidence, the State violated
 
 Giglio
 
 by presenting the false testimony of witness Charles Brewer, and he was denied the opportunity to present new evidence pertinent to his claim for clemency; and (3) proceeding with the execution of Gross-man will violate the Eighth Amendment of the United States Constitution because he may be incompetent at the time of the execution. We now address and reject all three claims.
 

 I.
 
 Ineffective Assistance of Counsel During Penalty Phase
 

 In his third successive postconvietion motion, Grossman argued that his constitutional rights were violated when the trial court considering his original postcon-viction motion summarily denied his claim that trial counsel provided ineffective assistance at the penalty phase of his trial by failing to have him examined by a competent mental health professional as required by
 
 Ake v. Oklahoma.
 
 He contended that the sentencing court therefore did not hear all possible evidence regarding mitigating circumstances before sentencing and attached the report of Dr. Fisher to his motion. Grossman further alleged that he would now call Dr. Michael Maher, who recently reviewed the raw data generated by testing done by Dr. Fisher and Dr. Dee. He alleges that Dr. Maher, a new expert, would “testify about Mr. Gross-man’s life-long intellectual neurological deficits[,] ... how it affected Grossman’s state of mind at the time of the crime,” and about Grossman’s dependency on alcohol and drugs, which manifested at an early age. Dr. Maher would “also conduct a clinical evaluation of his own to establish statutory or non-statutory mitigation.” The postconviction court summarily denied this claim as procedurally barred and untimely.
 

 As we explained in
 
 Tompkins v. State,
 
 994 So.2d 1072, 1080-81 (Fla.2008):
 

 Florida Rule of Criminal Procedure 3.851 governs the filing of postconviction motions in capital cases. Rule 3.851(d)(1) generally prohibits the filing of a postconviction motion more than one year after the judgment and sentence become final. An exception permits filing beyond this deadline if the movant alleges that “the facts on which the claim is predicated were unknown to the movant or the movant’s attorney and could not have been ascertained by the exercise of due diligence.” Fla. R.Crim. P. 3.851(d)(2)(A).... Rule 3.851 also provides certain pleading requirements for initial and successive postconviction motions. Fla. R.Crim. P. 3.851(e)(l)-(2). For example, the motion must state the nature of the relief sought, Fla. R.Crim. P. 3.851(e)(1)(C), and must include “a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought.” Fla. R.Crim. P. 3.851(e)(1)(D).
 

 
 *1042
 
 Rule 3.851(f)(5)(B) permits the denial of a successive postconviction motion without an evidentiary hearing “[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief.” A postconviction court’s decision regarding whether to grant a rule 3.851 evidentiary hearing depends on the written materials before the court; therefore, for all intents and purposes, its ruling constitutes a pure question of law and is subject to de novo review.
 
 See, e.g., Rose v. State,
 
 985 So.2d 500, 505 (Fla.2008). In reviewing a trial court’s summary denial of post-conviction relief, this Court must accept the defendant’s allegations as true to the extent that they are not conclusively refuted by the record.
 
 See Rolling v. State,
 
 944 So.2d 176, 179 (Fla.2006).
 

 Because Grossman’s claim was summarily denied, our review is de novo.
 
 Walton v. State,
 
 3 So.3d 1000, 1005 (Fla.2009).
 

 We conclude that summary denial of this claim was proper for two reasons. First, as the trial court concluded, this claim is procedurally barred. Grossman’s contention that his constitutional rights were violated when the original postconviction court summarily denied his ineffective assistance claim is merely an impermissible attemjot to resurrect that ineffective assistance claim, the summary denial of which was affirmed by this Court.
 
 See Gross-man,
 
 708 So.2d at 252. This claim was also raised in Grossman’s federal habeas petition, which was denied by the federal disti'ict court.
 
 See Grossman,
 
 359 F.Supp.2d at 1267-70 (“Grossman has failed to demonstrate any error in the denial of his claim that his attorneys were ineffective in the investigation and presentation of mitigating evidence.”). In fact, Grossman was permitted an evidentiary healing on his ineffective assistance of counsel claim that his counsel was deficient in not offering mental health testimony-claim V in his original postconviction motion.
 

 Second, we agree with the trial court’s conclusion that Grossman’s claim does not present newly discovered evidence and is therefore untimely. To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements: First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.
 
 See Jones v. State,
 
 709 So.2d 512, 521 (Fla.1998).
 

 We reject Grossman’s claim on the first prong of
 
 Jones
 
 and therefore need not reach the second prong. Grossman attempts to argue that the proposed testimony of his new expert, Dr. Maher, concerning nonstatutory mental mitigation, is newly discovered evidence in light of the decision of the United States Supreme Court in
 
 Porter v. McCollum,
 
 — U.S. -, 130 S.Ct. 447, - L.Ed.2d - (2009), because “[pjrior to
 
 Porter,
 
 Florida Courts did not consider non-statutory mental mitigation
 
 as
 
 mitigation.” We reject this claim.
 
 Porter
 
 did not grant Florida courts the authority to consider this type of mitigation, but rather recognized that Florida courts already do so: “Under Florida law, mental health evidence that does not rise to the level of establishing a statutory mitigating circumstance may nonetheless be considered by the sentencing judge and jury as mitigating.” 130 S.Ct. at 454 (citing
 
 Hoskins v. State,
 
 965 So.2d 1, 17-18 (Fla.2007)).
 

 Accordingly, we deny relief on this claim.
 

 
 *1043
 
 II.
 
 The Constitutionality of Florida’s Death Penalty Statute as Applied
 

 We turn next to Grossman’s claim that the Florida death penalty statute is arbitrary and capricious as applied to him, in violation of
 
 Furman v. Georgia,
 
 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), because (1) the court and jury did not hear all available mitigating evidence at the penalty phase; (2) the State violated
 
 Gig-lio
 
 by presenting the false testimony of witness Charles Brewer; and (3) Gross-man has not had the opportunity to present newly discovered evidence in clemency proceedings. In the first of these three claims, Grossman merely reasserts the same allegations we rejected above as procedurally barred — that the trial court and jury were not able to consider all possible mitigating evidence at the penalty phase. Therefore, we do not further address this subclaim.
 

 A.
 
 Giglio
 
 Claim
 

 Grossman alleged in his third successive postconviction motion that the State violated
 
 Giglio
 
 by presenting the false testimony of witness Charles Brewer. Specifically, Grossman contended that his death sentence is arbitrary and capricious because he is being treated differently than another death row inmate, Paul Beasley Johnson, whose sentence of death was recently vacated by this Court due to pros-ecutorial misconduct resulting from a
 
 Gig-lio
 
 violation.
 
 [6]
 

 See Johnson v. State,
 
 — So.3d -, 2010 WL 121248, 35 Fla. L. Weekly S43 (Fla. Jan. 14, 2010).
 

 We conclude that summary denial of this claim was proper.
 
 Johnson
 
 is distinguishable and applied well-established precedent to the unique facts of that case. There, a successive rule 3.851 motion presented newly discovered evidence that the State committed a
 
 Giglio
 
 violation by knowingly presenting false testimony:
 

 Specifically, we conclude that newly disclosed evidence shows the following. First, after Johnson was arrested and counsel was appointed, the State intentionally induced Johnson to make incriminating statements to a jailhouse informant in violation of Johnson’s right to counsel. Because Johnson’s statements were impermissibly elicited, the informant’s testimony concerning those statements was inadmissible under
 
 United States v. Henry,
 
 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ecl.2d 115 (1980). Second, although the prosecutor at Johnson’s first trial knew that Johnson’s statements were impermissibly elicited and that the informant’s testimony was inadmissible, he knowingly used false testimony and misleading argument to convince the court to admit the testimony. And third, because the informant’s testimony was admitted and then later used at Johnson’s 1988 trial, and because the State has failed to show that this error did not contribute to the jury’s advisory sentences of death, we must vacate the death sentences under
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and remand for a new penalty phase proceeding before a new jury.
 

 Johnson,
 
 — So.3d at -, 2010 WL 121248, 35 Fla. L. Weekly at S43.
 

 In Grossman’s original postconviction motion, he raised a claim of prosecutorial misconduct regarding Brewer’s testimony. Following the 1995 evidentiary hearing on
 
 *1044
 
 that claim, the trial court denied relief, finding that there was no evidence that the State knew Brewer’s testimony was false at the time of trial and further found that, in any event, Grossman had not shown how Brewer’s allegedly false testimony affected the judgment or sentence in Gross-man’s case. In his third successive postcon-viction motion, Grossman does not provide any new evidence or indication that prose-cutorial misconduct occurred. Therefore, unlike in
 
 Johnson,
 
 Grossman’s claim is successive, and we deny relief on that basis.
 

 B. Clemency Proceedings
 

 Grossman next argued in his third successive postconviction motion that the death penalty is arbitrary and capricious as applied to him because he had a clemency proceeding in October 1988, but has not had an opportunity to present further information about his life in a recent clemency proceeding. He asserted that newly discovered evidence would explain why he acted impulsively at nineteen years of age when he committed the murder. He further contended that the clemency procedures are impermissibly arbitrary.
 

 We conclude that the trial court properly denied this claim without an evidentiary hearing. This Court recently rejected an identical claim in
 
 Johnston v. State,
 
 27 So.3d 11 (Fla.2010):
 

 Johnston contends that his original clemency hearing was inadequate to protect his rights because it was conducted before his full life history and mental illness history were developed. We rejected a similar argument in
 
 Bundy
 
 that time must be given to prepare and present a case for clemency in a second clemency proceeding before the death sentence may be carried out.
 
 Bundy[v. State],
 
 497 So.2d [1209] at 1211 [(Fla.1986)]. We also noted in
 
 Marek v. State,
 
 14 So.3d 985 (Fla.2009), after Marek raised a second challenge to the clemency process, that “five justices of the United States Supreme Court concluded [in
 
 Ohio Adult Parole Authority v. Woodard,
 
 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) ] that some minimal procedural due process requirements should apply to clemency ... [b]ut none of the opinions in that case required any specific procedures or criteria to guide the executive’s signing of warrants for death-sentenced inmates.”
 
 Marek,
 
 14 So.3d at 998. We again conclude that no specific procedures are mandated in the clemency process and that Johnston has been provided with the clemency proceedings to which he is entitled.
 

 Further, we decline to depart from the Court’s precedent, based on the doctrine of separation of powers, in which we have held that it is not our prerogative to second-guess the executive on matters of clemency in capital cases. Johnston has not provided any reason for the Court to depart from its precedents or to hold that an additional clemency proceeding is required before a death warrant is signed. Because these same claims have been raised and ruled on in the Court’s prior precedents, and Johnston has provided no reason for the Court to depart from those precedents, relief is denied.
 

 Johnston,
 
 27 So.3d at 25-26, 2010 WL 183984;
 
 see also Marek,
 
 14 So.3d at 998;
 
 Bundy,
 
 497 So.2d at 1211. Similarly, Grossman has not provided any reason why this Court should depart from its well-established precedent on this issue, and we thus deny relief on this claim.
 

 III.
 
 Competency to be Executed
 

 Grossman’s final argument in his third successive postconviction motion is that executing him would be cruel and unusual punishment because he may be incompetent at the time of execution. The
 
 *1045
 
 trial court dismissed this claim on the ground that the claim was premature under both section 922.07, Florida Statutes (2009), and Florida Rule of Criminal Procedure 3.811(c). Rule 3.811(c) provides that “[n]o motion for a stay of execution pending hearing, based on grounds of the prisoner’s insanity to be executed, shall be entertained by any court until such time as the Governor of Florida shall have held appropriate proceedings for determining the issue pursuant to the appropriate Florida statutes.”
 
 See also
 
 § 922.07, Fla. Stat. (2009) (outlining procedures for Governor to follow when he or she is informed that a person under sentence of death may be insane). We conclude that the trial court properly dismissed this claim because under rule 3.811(c) and section 922.07, Gross-man must exhaust his administrative remedies before he can raise this issue in court. The trial court also properly dismissed this claim on the basis that it lacked jurisdiction to consider the claim under Florida Rule of Criminal Procedure 3.811(d)(1). Rule 3.811(d)(1) provides in pertinent part: “The motion shall be filed in the circuit court of the circuit in which the execution is to take place.... ” Accordingly, we affirm the trial court’s dismissal of this claim.
 

 CONCLUSION
 

 For the reasons discussed above, we affirm the trial court’s summary denial of Grossman’s third successive motion for postconvietion relief.
 

 It is so ordered.
 

 PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ. concur.
 

 QUINCE, C.J., recused.
 

 [1]
 

 . These cases are:
 
 Grossman v. State,
 
 525 So.2d 833 (Fla.1988), ce
 
 rt. denied,
 
 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989);
 
 Grossman v. Dugger,
 
 708 So.2d 249 (Fla.1997);
 
 Grossman v. Crosby,
 
 880 So.2d 1211 (Fla.2004);
 
 Grossman v. Crosby,
 
 359 F.Supp.2d 1233 (M.D.Fla.2005),
 
 aff'd sub nom. Grossman v. McDonough,
 
 466 F.3d 1325 (11th Cir.2006),
 
 cert. denied,
 
 550 U.S. 958, 127 S.Ct. 2430, 167 L.Ed.2d 1133 (2007);
 
 Grossman v. State,
 
 932 So.2d 192 (Fla.2006); and
 
 Grossman v. State,
 
 5 So.3d 668, 2009 WL 500730 (Fla.2009).
 

 [2]
 

 . The trial court found four aggravating circumstances:
 

 (1) the murder was committed while engaged in the commission of or an attempt to commit, or flight after committing or attempt to commit, the crime of robber)' or burglary; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest; (3) the murder was committed to disrupt or hinder the lawful exercise of government function or the enforcement of laws; and (4) the murder was especially wicked, evil, atrocious, or cruel. Numbers two and three were treated as one circumstance by the trial judge.
 

 Id.
 
 at 840. The trial court found no mitigating circumstances.
 
 Id.
 
 at 846.
 

 [3]
 

 . This report by Dr. Fisher is the same report from Dr. Fisher attached by Grossman to his third successive postconviction motion, the summary denial of which is the subject of the present appeal.
 

 [4]
 

 . In his current successive motion, Grossman alleges that in addition to Dr. Fisher, Dr. Henry Dee, an expert who had evaluated Grossman, was also available to testify at an evidentiary hearing to support Grossman’s allegations under claim VI of Grossman’s original postconviction motion. However, claim VI does not refer to Dr. Dee. Grossman alleges that Dr. Dee is now deceased.
 

 [5]
 

 . Grossman’s initial federal habeas petition was filed before his state habeas petition, but it was stricken.
 
 Grossman,
 
 359 F.Supp.2d at 1245. After he refiled the petition, the case was administratively closed pending the outcome of two Florida cases that addressed issues arising from
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
 
 Grossman,
 
 359 F.Supp.2d at 1245.
 

 [6]
 

 . To establish a
 
 Giglio
 
 violation, a defendant must show that: (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor knew the testimony was false; and (3) the false evidence was material.
 
 See Guzman v. State,
 
 941 So.2d 1045, 1050 (Fla.2006). If the first two prongs are established, the false evidence is deemed material if there is any reasonable possibility that it could have affected the jury’s verdict.
 
 See id.