PER CURIAM.
Manuel Pardo, a prisoner under sentence and active warrant of death, appeals the circuit court’s order summarily denying his successive motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm the denial of postconviction relief.
BACKGROUND
Pardo was indicted for nine counts of first-degree murder based on five separate killing episodes that took place from January to April 1986. At his trial, Pardo, a former police officer, testified against the advice of counsel and admitted to having committed the nine murders, stating that the victims were drug dealers who had no right to live. The jury found Pardo guilty of all nine murders and recommended the death penalty by votes ranging from eight-to-four to ten-to-two. The trial court followed the jury’s recommendations, imposing a death sentence for each of the nine first-degree murder counts. We affirmed Pardo’s convictions and death sentence on direct appeal. Pardo v. State, 563 So.2d 77, 81 (Fla.1990), cert. denied, Pardo v. Florida, 500 U.S. 928, 111 S.Ct. 2043, 114 L.Ed.2d 127 (1991). Pardo subsequently filed a motion for postconviction relief, which the circuit court denied after a two-day evidentiary hearing. On appeal, we affirmed the circuit court’s denial of post-conviction relief, denied Pardo’s accompanying petition for writ of habeas corpus, and denied rehearing. Pardo v. State, 941 So.2d 1057, 1073 (Fla.2006). Pardo then sought habeas corpus relief in the federal courts, which was also denied. Pardo v. Sec’y, Fla. Dep’t of Corr., 587 F.3d 1093, 1106 (11th Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 3334, 176 L.Ed.2d 1231 (2010), and reh’g denied, — U.S. -, 131 S.Ct. 38, 177 L.Ed.2d 1128 (2010).
On October 30, 2012, Governor Rick Scott signed a death warrant for Pardo, and the execution was set for December 11, 2012. Thereafter, Pardo filed a successive motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851. The circuit court denied the motion without holding an evidentiary hearing. Pardo has filed this appeal of the circuit court’s summary denial, in which he raises five claims.
ANALYSIS
Pardo’s postconviction claims are governed by rule 3.851, which provides the pleading requirements for initial and successive postconviction motions. Fla. R.Crim. P. 3.851(e)(1)-(2). In particular, a motion for postconviction relief must state the nature of the relief the defendant seeks, Fla. R.Crim. P. 3.851(e)(1)(C), and must include “a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought.” Fla. R.Crim. P. 3.851(e)(1)(D).
An evidentiary hearing on a rule 3.851 motion “should be held ‘whenever the movant makes a facially sufficient claim that requires a factual determination.’ ” Parker v. State, 89 So.3d 844, 855 (Fla.2011) (quoting Gore v. State, 24 So.3d 1, 11 (Fla.2009)). However, “[p]ostconvic *561 tion claims may be summarily denied when they are legally insufficient, should have been brought on direct appeal, or are positively refuted by the record.” Id. (quoting Gore, 24 So.3d at 11). Because the circuit court denied Pardo’s successive rule 3.851 motion without holding an evidentiary hearing, we review the circuit court’s decision de novo, “accepting the movant’s factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief.” Gore v. State, 91 So.3d 769, 774 (Fla.) (quoting Walton v. State, 3 So.3d 1000, 1005 (Fla.2009)), cert. denied, — U.S. -, 132 S.Ct. 1904, 182 L.Ed.2d 661 (2012).
In his appeal to this Court, Pardo argues that the circuit court erred in summarily denying the following claims: (1) Florida’s September 4, 2012, lethal injection protocol is unconstitutional; (2) he has been denied public records necessary to establish his lethal injection claim; (3) he was incompetent to stand trial; (4) he was denied an adequate clemency proceeding; and (5) executing him after he has spent more than two decades on death row constitutes cruel and unusual punishment. We address each claim in turn.

Lethal Injection Protocol

The first issue Pardo raises on appeal is the circuit court’s summary denial of his challenge to the constitutionality of Florida’s lethal injection protocol. Pardo’s principal arguments center on the following allegations: (1) when Florida’s lethal injection protocol substituted pentobarbital for sodium thiopental as the first drug in the three-drug lethal injection sequence, the State failed to modify its protocol to account for the fact that pentobarbital may take longer to act than sodium thiopental; (2) there are serious risks associated with using pentobarbital as an anesthetic; (3) Florida’s supply of vecuronium bromide, which is now the second drug in the three-drug sequence, may be tainted; and (4) if pentobarbital improperly mixes with vecu-ronium bromide during the administration of the lethal injection drugs, the intended anesthetic effects of the pentobarbital could potentially be compromised. The State asserts, first, that the claims involving pentobarbital are procedurally barred because the substitution of pentobarbital in the protocol occurred more than one year ago; and, second, that Pardo’s challenge to the recent substitution of vecuro-nium bromide is legally insufficient. The circuit court denied Pardo’s lethal injection claims as time barred and meritless.
In relatively recent succession — first in June 2011 and then in September 2012— the State has twice changed the protocol pertaining to which drugs are used in Florida’s three-drug lethal injection sequence. A number of defendants have brought challenges to the substitution of the new drugs, asserting that there is no evidence that these drugs will perform as intended and that experts have not yet determined the appropriate dosage for their use in lethal injection. See, e.g., Valle v. State, 70 So.3d 530 (Fla.), cert. denied, — U.S. -, 132 S.Ct. 1, 180 L.Ed.2d 940 (2011). This Court has denied these claims, holding that a defendant cannot sustain the heavy burden required to show an Eighth Amendment violation through speculation and by pointing to a lack of evidence. Id. at 541, 546. We recognize, however, that the use of these particular drugs in executions is comparatively new, and that the body of relevant science is still being developed. Therefore, in reviewing the challenges presented, we are cognizant of our responsibility to examine the specific allegations that the defendant is raising in order to determine whether the defendant is relying on new *562 evidence that did not exist previously or on new factual developments. See, e.g., Schwab v. State, 969 So.2d 318, 321 (Fla.2007) (“As this Court has held before, when an inmate presents an Eighth Amendment claim which is based primarily upon facts that occurred during a recent execution, the claim is not procedurally barred.”); Fla. R.Crim. P. 3.851(e)(2).
The Eleventh Circuit Court of Appeals has likewise recognized this same concept. In Arthur v. Thomas, 674 F.3d 1257, 1260, 1262 (11th Cir.2012), the Eleventh Circuit held that it was error to summarily dismiss, without permitting an opportunity for evidentiary development, a defendant’s complaint that the substitution of pento-barbital in Alabama’s lethal injection protocol constituted a “significant change” for purposes of the Eighth Amendment. The Eleventh Circuit explained as follows:
Simply because no court, based on the allegations and evidence that has been presented in cases to date, has found a significant change does not mean that such evidence does not exist. To read our circuit decisions in Powell [v. Thomas, 643 F.3d 1300 (11 th Cir.2011)], DeYoung [v. Owens, 646 F.3d 1319 (11th Cir.2011)], and Valle [v. Singer, 655 F.3d 1223 (11 th Cir.2011) ] as holding-no matter what new facts allege or new evidence reveals — that Alabama’s, Georgia’s and Florida’s substitutions of pen-tobarbital for sodium thiopental is not a significant change in their execution protocols is to ignore the reality that scientific and medical evidence that exists today may differ from that which new scientific and medical discoveries and research reveal tomorrow.
Id. at 1260. With this backdrop in place, but mindful that a defendant is not entitled to relitigate claims that have been previously rejected without relying on new evidence or new factual developments, we now turn to the merits of Pardo’s Eighth Amendment claim, focusing on whether Pardo has presented new arguments we have not previously considered.
While the “death penalty is an authorized punishment for capital crimes,” art. I, § 17, Fla. Const., this Court has the duty “to ensure that the method used to execute a person in Florida does not constitute cruel and unusual punishment.” Lightbourne v. McCollum, 969 So.2d 326, 349 (Fla.2007). In accordance with our state constitution, this Court evaluates “whether lethal injection is unconstitutional ‘in conformity with decisions of the United States Supreme Court.’ ” Id at 335 (quoting art. I, § 17, Fla. Const.). The United States Supreme Court’s plurality decision in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), sets forth the requirements that a defendant must meet in order to succeed in an Eighth Amendment challenge to a state’s lethal injection protocol. Although subjecting one to a risk of future harm can qualify as cruel and unusual punishment, the Supreme Court in Baze explained that to prevail on such a claim, condemned inmates must demonstrate that “the conditions presenting the risk must be ‘sure or very likely to cause serious illness and needless suffering,’ and give rise to ‘sufficiently imminent dangers.’ ” Id. at 49-50, 128 S.Ct. 1520 (plurality opinion) (quoting Helling v. McKinney, 509 U.S. 25, 33, 34-35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). That is, “there must be a ‘substantial risk of serious harm,’ an ‘objectively intolerable risk of harm’ that prevents prison officials from pleading that they were ‘subjectively blameless for purposes of the Eighth Amendment.’ ” Id. at 50, 128 S.Ct. 1520 (quoting Farmer v. Brennan, 511 U.S. 825, 842, 846 & n. 9, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). An inmate faces a “heavy burden” to show that lethal injection procedures violate the Eighth Amend *563 ment. Id. at 58, 128 S.Ct. 1520 (quoting Gregg v. Georgia, 428 U.S. 153, 175, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). A defendant cannot simply rely on conjecture and speculation. See Brewer v. Landrigan, —U.S. -, 131 S.Ct. 445, 445, 178 L.Ed.2d 346 (2010) (mem.).
Pardo first objects to the constitutionality of Florida’s lethal injection protocol as it relates to pentobarbital, the first drug, asserting many of the same claims we have already considered and rejected in Valle, where we stated:
In order to show the risks of using pentobarbital as a substitute, Valle relies extensively on the testimony of Dr. Wai-sel, who testified that pentobarbital and sodium thiopental are not interchangeable barbiturates, that five grams of sodium thiopental are not proportionally equivalent to five grams of pentobarbi-tal, and that due to a lack of research, he would be unable to determine a dose of pentobarbital that would properly anesthetize an individual. Instead, he could only testify as to the amount needed to sedate someone....
In opposition, the State presented the testimony of Dr. Dershwitz, who testified that 5000 milligrams of pentobarbi-tal, as provided for in the DOC’s lethal injection protocol, is “far in excess of the dose that would be used in a human for any reason.” According to Dr. Der-shwitz, that dosage of pentobarbital is lethal standing alone, and when administered, the drug will induce a total flat line on the electroencephalogram (EEG) in brain activity, meaning that the person into whom the drug is injected will have no perception or sensation....
[[Image here]]
Based upon the testimony presented, the circuit court concluded that Dr. Der-shwitz “refuted any suggestion that the dose of pentobarbital in the Florida lethal injection protocol would leave an inmate conscious and able to experience pain and suffering during the lethal injection process.” The circuit court’s findings are borne out by the testimony and are well-supported by the record. While Dr. Waisel opined that he would be unable to determine whether pento-barbital would produce its intended effect (i.e., to anesthetize the inmate before the administration of the last two drugs in the three-drug sequence), in the end, he did not testify that the drug would fail to do so. By asserting that no evidence exists concerning whether pentobarbital will render an inmate unconscious, Valle has failed to meet his burden of proof. As the circuit court correctly recognized, Dr. Waisel’s asserted lack of knowledge about pento-barbital’s effects falls short of the heavy burden of affirmatively showing that the drug is sure or very likely to cause serious illness and needless suffering or that its use will result in a substantial risk of serious harm.
Valle, 70 So.3d at 540-41 (footnotes omitted). We therefore reject these portions of Pardo’s lethal injection claim, including the alleged risks associated with using pentobarbital as an anesthetic, based on the reasoning we fully explained in Valle.
Pardo does raise one new Eighth Amendment challenge relating to the substitution of pentobarbital in the lethal injection protocol, asserting that, while pen-tobarbital has a substantially slower onset than the drug it replaced, the State did not modify the protocol to account for this fact, meaning that Pardo may not be fully anesthetized before the injection of the second and third drugs in the lethal injection sequence. Aside from speculation, however, Pardo fails to provide any specific allegation that such a scenario is likely. To support his assertion, Pardo relies on the *564 declaration of his expert, anesthesiologist Dr. Mark Heath, in which Dr. Heath states as follows:
There is no literature regarding the timeframe with which pentobarbital would produce anesthesia if it were to be used for induction. Based on its chemical properties it is predictable that its onset of action would be slower than that of thiopental. In other words, the time it takes for a patient to transit from consciousness to unconsciousness would be longer with pentobarbital than with an equivalent dose of thiopental. But there is no information available that would allow an accurate prediction of how much slower it would be.
(Emphasis added.)
Upon a full review of the record, we deny this aspect of Pardo’s lethal injection claim because he bases his challenge on pure speculation and conjecture. Nothing within Dr. Heath’s declaration alleges that Pardo will not be unconscious or that he will be insufficiently anesthetized at the time the other two drugs are introduced. Pardo cannot sustain the heavy burden of bringing an Eighth Amendment challenge by resting solely upon a lack of evidence. See Valle, 70 So.3d at 541 (“By asserting that no evidence exists concerning whether pentobarbital will render an inmate unconscious, Valle has failed to meet his burden of proof.... Dr. Waisel’s asserted lack of knowledge about pentobarbital’s effects falls short of the heavy burden of affirmatively showing that the drug is sure or very likely to cause serious illness and needless suffering or that its use will result in a substantial risk of serious harm.” (footnote omitted)). Accordingly, we deny Pardo’s challenge to the substitution of pentobarbital in Florida’s lethal injection protocol.
Next, Pardo challenges the constitutionality of lethal injection in light of his allegation that Florida’s vecuronium bromide supply may be tainted. Again, however, this challenge rests purely on speculation. Therefore, we also deny this portion of Pardo’s lethal injection claim.
In his final lethal injection challenge, Pardo argues that Florida’s lethal injection protocol is unconstitutional because it violates the drug manufacturer’s warning that vecuronium bromide “should not be mixed with alkaline solutions (e.g., barbiturate solutions such as thiopental [or pentobarbital]) in the same syringe or administered simultaneously during intravenous infusion through the same needle or through the same intravenous line.” Par-do alleges that if pentobarbital and vecuro-nium bromide improperly mix, pentobarbi-tal would precipitate, possibly resulting in a smaller dose of pentobarbital than is intended and thereby potentially compromising the intended anesthetic effects of the pentobarbital. Even accepting Pardo’s argument as true, however, this claim is disproved by the lethal injection protocol itself. Specifically, pentobarbital is the first chemical to be introduced. Pardo’s allegations fail to show how the effectiveness of pentobarbital is compromised when it has already been administered prior to the introduction of vecuronium bromide.
In Ferguson v. Warden, Florida State Prison, Case No. 12-15191, 2012 WL 4946112 (11th Cir. Oct. 18, 2012), cert. denied, — U.S. -, 138 S.Ct. 498, 184 L.Ed.2d 334 (2012), the Eleventh Circuit recently denied a defendant’s similar Eighth Amendment challenge to Florida’s lethal injection protocol, as amended in September 2012, holding both that the use of pentobarbital in the lethal injection sequence does not violate the Eighth Amendment and, as to the new claims concerning the substitution of vecuronium bromide as the second drug in the three-drug sequence, that
*565 Ferguson’s speculation as to the parade of horribles that could possibly occur during his execution does not meet the burden of proof required by the Eighth Amendment.... Simply because an execution method may inadvertently result in pain does not establish the sort of ‘objectively intolerable risk of harm’ necessary to establish an Eighth Amendment violation.
Id. at *2 (quoting Baze, 553 U.S. at 50,128 S.Ct. 1520).
After fully reviewing Pardo’s challenges to lethal injection and examining the record upon which he relies, we deny Pardo’s constitutional challenges to Florida’s lethal injection protocol because his allegations are based primarily on speculation and conjecture. In this way, Pardo’s claim falls short of the heavy burden of affirmatively showing that Florida’s lethal injection protocol in effect is sure or very likely to cause serious illness and needless suffering, or that it will result in a substantial risk of serious harm. See Baze, 558 U.S. at 50, 128 S.Ct. 1520 (holding that the defendant must demonstrate that “the conditions presenting the risk must be ‘sure or very likely to cause serious illness and needless suffering,’ and give rise to ‘sufficiently imminent dangers’ ” (quoting Helling, 509 U.S. at 33, 34-35, 113 S.Ct. 2475)). Accordingly, we affirm the circuit court’s denial of relief on Pardo’s constitutional challenge to Florida’s lethal injection protocol.

Public Records Requests

Next, Pardo alleges that the circuit court erred in denying his public records requests and that the Florida Department of Corrections (DOC) has frustrated condemned inmates’ efforts to discover and present relevant facts necessary to evaluate the constitutionality of Florida’s lethal injection procedures, including how the DOC procures the drugs. The circuit court held a hearing on Pardo’s public records requests and denied Pardo’s demand for additional public records.
Pursuant to Florida Rule of Criminal Procedure 3.852(i)(2), Pardo must demonstrate the following requirements before a circuit court can order that additional public records be disclosed:
(A) collateral counsel has made a timely and diligent search of the records repository;
(B) collateral counsel’s affidavit identifies with specificity those additional public records that are not at the records repository;
(C) the additional public records sought are either relevant to the subject matter of a proceeding under rule 3.851 or appear reasonably calculated to lead to the discovery of admissible evidence; and
(D) the additional records request is not overly broad or unduly burdensome.
Fla. R.Crim. P. 3.852(i)(2). This Court reviews the circuit court’s denial of a public records request for an abuse of discretion. Valle, 70 So.3d at 549.
The records that Pardo sought in this case are similar to the records the defendant sought in Valle. This Court held in Valle that the circuit court did not abuse its discretion in denying the request for public records because the pleadings were speculative, conclusory, and failed to allege how the requested information would lead to evidence pertaining to a colorable Eighth Amendment violation, which requires a showing that use of the drug is ‘“sure or very likely to cause serious illness and needless suffering’ and give rise to ‘sufficiently imminent dangers.’ ” Baze, 553 U.S. at 50, 128 S.Ct. 1520 (quoting Helling, 509 U.S. at 33, 34-35, 113 S.Ct. 2475). Specifically, we analyzed the claim as follows:
*566 With respect to Valle’s assertion that undisclosed records could show that sodium thiopental and pentobarbital were obtained from a foreign country, such information would be of questionable relevance, and he has failed to demonstrate how its disclosure would relate to a colorable Eighth Amendment claim.... In requesting these materials, Valle simply posits a hypothetical argument, but he does not explain why these facts will result in a substantial risk of serious harm.... Because he has failed to allege how this information would lead to evidence related to his claim, Valle’s requests on this issue appear to be no more than a “fishing expedition” for which rule 3.852 is not intended. Consequently, the circuit court did not err in denying Valle’s requests to produce these records.
Valle, 70 So.3d at 549.
Likewise, in this case, Pardo is not asserting how the information he seeks would lead to a colorable Eighth Amendment claim that use of the drugs is “ ‘sure or very likely to cause serious illness and needless suffering’ and give rise to ‘sufficiently imminent dangers.’” Baze, 553 U.S. at 50, 128 S.Ct. 1520 (quoting Helling, 509 U.S. at 33, 34-35, 113 S.Ct. 2475). Instead, Pardo challenges the deference that the judicial branch gives to another branch of government that it will fulfill its obligations in a constitutional and lawful manner. This is not an Eighth Amendment claim. While Pardo’s public records requests may be narrower than the requests in Valle, Pardo still fails to establish how his requests are relevant to his Eighth Amendment claim that lethal injection under Florida’s protocol will result in a substantial risk of serious harm. Accordingly, we hold that the circuit court did not abuse its discretion in denying Pardo’s public records requests.

Competency to Stand Trial

In his third claim on appeal, Par-do alleges that he was incompetent to stand trial. Because Pardo has raised this argument at every stage of his appellate proceedings, and because we have previously rejected it, we find that the circuit court did not err in denying this claim as procedurally barred.
On direct appeal, Pardo argued that the trial court should have ordered a competency hearing to determine whether his trial counsel properly stipulated that Par-do was competent to stand trial. Pardo, 563 So.2d at 79. In rejecting this claim, we stated as follows:
When trial counsel requested that experts be appointed to examine Pardo and determine his sanity at the time of each episode, the court asked if counsel wanted experts also appointed to determine competency and offered to hold a hearing on the subject. Counsel stipulated that his client was competent and repeated that he only wanted a determination of sanity. The court-appointed experts examined Pardo, found him to have been sane, and also determined that he was competent to stand trial. Thus, not only was there no reason for the court to have ordered a competency hearing, but also there was no prejudice to Pardo, as the hearing would not have benefitted him.
Id. Therefore, not only did we determine on direct appeal that there was no need for a competency hearing in this case, but we also found that Pardo had not been prejudiced by the lack of such a hearing since three court-appointed experts and one defense expert had examined Pardo and determined that he was, in fact, competent to stand trial.
In his initial postconviction motion, Par-do challenged the adequacy of those expert evaluations and alleged that trial counsel *567 was ineffective, both for failing to request a competency hearing and for failing to investigate the cause of Pardo's alleged insanity and incompetence. Pardo, 941 So.2d at 1062. Specifically, Pardo pointed to a post-trial diagnosis of hypothyroidism, the mental health effects of which he alleged rendered him incompetent to stand trial. Id. at 1063. In rejecting Pardo’s claim as procedurally barred, we stated that “Pardo’s assertion that he was tried while incompetent in violation of due process of law is merely a variant of his failed argument on direct appeal that the trial court should have ordered a competency hearing sua sponte.” Id. at 1062. We further rejected Pardo’s reliance on his hypothyroidism diagnosis, explaining that “[l]ike the performance of counsel, the competence of an expert’s assistance should be evaluated from the perspective of the circumstances in which it was conducted, free of ‘the distorting effects of hindsight.’” Id. at 1063 (quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We therefore concluded that, “[flrom this perspective, the evaluations of Pardo were not so deficient that he was denied his due process right to competent expert assistance.” Id.
Furthermore, we likewise rejected Par-do’s claim in his initial postconviction appeal that trial counsel was ineffective with respect to Pardo’s alleged incompetence to stand trial. First, we stated that the two forensic psychiatrists and two clinical psychologists who determined that Pardo was competent to stand trial “explained their conclusions in terms consistent with the standards for competency set out in Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), and Florida Rule of Criminal Procedure 3.211(a)(2).” Pardo, 941 So.2d at 1063. Second, we found that Pardo’s trial counsel and the four experts who evaluated Pardo “appropriately focused not on symptoms [like hair loss and weight gain] indicating a physical illness but on Pardo’s mental functioning — his comprehension and ability to reason.” Id. at 1064. Lastly, we noted that “Pardo’s claim rests on observations of physical symptoms which ... did not indicate to a medical doctor a physical disorder bearing on Pardo’s competency or sanity.” Id.
Despite having previously raised and litigated his competence to stand trial both on direct appeal and in his initial postcon-viction motion, Pardo argues that this claim is not now procedurally barred because the issue presented on direct appeal and relied on to bar the claim during his initial postconviction appeal was not fully developed. We reject this argument.
Pardo has not presented any new evidence in his successive motion for postcon-viction relief that was not presented in his initial motion, which was previously denied. Indeed, in his current appeal to this Court, Pardo predominantly reargues points alleged in his initial motion regarding the purported effects of his hypothyroidism on his competence to stand trial. This claim has been considered and rejected in proceedings at every step of this case.
Furthermore, we reject as unsupported by the record Pardo’s argument that this Court has simply relied on a misguided procedural bar and never fully considered this issue. The record in this case is clear that Pardo was evaluated before trial by four medical professionals, all of whom concluded, pursuant to the legal standard for competency, that he was competent to stand trial. While Pardo alleges that these expert evaluations were deficient, we have previously rejected this claim, and Pardo cannot now rely on “the distorting effects of hindsight” to second-guess the expert evaluations in his case. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. As we *568 previously stated, fully informed about the alleged effect of Pardo’s hypothyroidism on his competence to stand trial, “the evaluations of Pardo were not so deficient that he was denied his due process right to competent expert assistance.” Pardo, 941 So.2d at 1063.
Accordingly, we agree with the circuit court that this claim is procedurally barred, and we therefore affirm the circuit court’s denial of relief.

Clemency Proceedings

In his fourth claim on appeal, Pardo alleges that he was denied a full and fair clemency proceeding.[1] At the hearing held in the circuit court to determine whether an evidentiary hearing was warranted, Pardo produced an affidavit from the attorney who served as his clemency counsel, in which the attorney recalled attending a meeting at Florida State Prison in 1990 with Pardo and a member of the clemency board. Other documents in the record indicate that Pardo underwent an evaluation by DOC medical personnel around the same time for clemency purposes. In addition, Pardo’s death warrant includes language indicating that “after review of an updated clemency investigation at the time” of signing the warrant, the governor determined that clemency was “not appropriate.”
In denying this claim, the circuit court stated that Pardo “had his [clemency] interview” and that it is “solely the province of the executive branch to determine clemency.” Pardo contends that his clemency proceeding was inadequate because he did not have the opportunity to present witnesses and evidence, including information regarding his hypothyroidism diagnosis and his compelling life history, and because his clemency interview took place decades before his death warrant was signed. We find Pardo’s arguments unavailing for several reasons.
First, Pardo had a clemency proceeding in 1990 at which he was represented by counsel, and we have previously rejected the argument that a defendant is entitled to present a full accounting of mitigation evidence as part of the clemency process. See Grossman v. State, 29 So.3d 1034, 1044 (Fla.), cert. denied, — U.S. -, 130 S.Ct. 1498, 176 L.Ed.2d 105 (2010); Johnston v. State, 27 So.3d 11, 25 (Fla.), cert. denied, — U.S. -, 131 S.Ct. 459, 178 L.Ed.2d 292 (2010); Glock v. Moore, 776 So.2d 243, 252-53 (Fla.2001). Second, we have likewise rejected the argument that a long time lapse between a defendant’s clemency proceeding and the signing of his death warrant renders the clemency process inadequate or entitles the defendant to a second proceeding. See Gore, 91 So.3d at 778-79; Johnston, 27 So.3d at 25-26; Bundy v. State, 497 So.2d 1209, 1211 (Fla.1986). Third, we have consistently recognized that .clemency is an executive function and that, in accordance with the doctrine of separation of powers, we will not generally second-guess the executive’s determination that clemency is not warranted. See Johnston, 27 So.3d at 26 (“[W]e decline to depart from the Court’s precedent, based on the doctrine of separation of powers, in which we have held that it is not our prerogative to second-guess the executive on matters of clemency in capital cases.”); Rutherford v. State, 940 So.2d 1112, 1122-23 (Fla.2006) (denying a similar clemency claim because the defendant had a hearing and because clemency is an executive function); Bundy, 497 So.2d at 1211 (stating that it is not *569 this Court’s “prerogative to second-guess the application of this exclusive executive function”). Finally, while Pardo asserts that he should have been afforded an opportunity to participate in an updated clemency investigation before his death warrant was signed with the renewed consideration that executive clemency was considered and rejected, our precedent clearly refutes this argument. See Gore, 91 So.3d at 778-79; Grossman, 29 So.3d at 1044; Marek v. State, 14 So.3d 985, 998 (Fla.2009).
Accordingly, we affirm the circuit court’s denial of relief on this claim.

Length of Time on Death Row

In his final argument on appeal, Pardo asserts that the circuit court erred in summarily denying his claim that executing him after the twenty-four years he has spent on death row constitutes cruel and unusual punishment. Relying on this Court’s clearly established precedent on this issue, the circuit court denied Pardo’s length of time on death row claim as mer-itless and legally insufficient. The circuit court recognized what we have long held: “[N]o federal or state court has accepted the argument that a prolonged stay on death row constitutes cruel and unusual punishment, especially where both parties bear responsibility for the long delay.” Valle, 70 So.3d at 552 (quoting Tompkins v. State, 994 So.2d 1072, 1085 (Fla.2008)). Indeed, we have repeatedly rejected this claim for sentences of similar or greater length than Pardo’s. See Ferguson v. State, 101 So.3d 362, 366-67 (Fla.2012) (rejecting claim that over three decades of incarceration on death row constituted cruel and unusual punishment), cert. denied, - U.S. -, 133 S.Ct. 497, 184 L.Ed.2d 312 (2012); Gore, 91 So.3d at 780-81 (rejecting length of time on death row claim and noting that an inmate who had been on death row for over thirty years was executed in February 2012); Valle, 70 So.3d at 552 (rejecting claim that thirty-three years on death row constituted cruel and unusual punishment); Johnston, 27 So.3d at 27-28 (Fla.2010) (rejecting claim that almost twenty-five years on death row constituted cruel and unusual punishment); Tompkins, 994 So.2d at 1085 (rejecting claim that twenty-three years on death row constituted cruel and unusual punishment); Booker v. State, 969 So.2d 186, 200 (Fla.2007) (rejecting claim that almost thirty years on death row constituted cruel and unusual punishment); Lucas v. State, 841 So.2d 380, 389 (Fla.2003) (rejecting claim that over twenty-five years on death row constituted cruel, and unusual punishment); Foster v. State, 810 So.2d 910, 916 (Fla.2002) (rejecting claim that twenty-three years on death row constituted cruel and unusual punishment); Rose v. State, 787 So.2d 786, 805 (Fla.2001) (rejecting as meritless length of time on death row argument from prisoner under sentence of death since 1977).
Accordingly, because Pardo has not presented any compelling reason for us to reconsider our well-settled precedent on this issue, we find that the circuit court did not err in denying Pardo’s claim.
CONCLUSION
Based on the foregoing analysis, we affirm the circuit court’s denial of Pardo’s successive rule 3.851 motion for postcon-viction relief. No rehearing "will be entertained by this Court. The mandate shall issue immediately.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. To the extent that Pardo also alleges ineffective assistance of clemency counsel, we reject this claim as insufficiently argued.