# Supreme Court of Florida

_____

No. SC14-1178
_____

**EDDIE WAYNE DAVIS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[July 7, 2014]

PER CURIAM.

Eddie Wayne Davis, a prisoner under sentence of death for whom a death warrant has been signed, appeals the circuit court's denial of his successive motion for postconviction relief, which was filed pursuant to Florida Rule of Criminal Procedure 3.851 after his death warrant was signed. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm the circuit court's denial of postconviction relief. In addition, we deny Davis' motion for stay of execution, which he filed on June 23, 2014.

## BACKGROUND

Davis was convicted of the first-degree murder of eleven-year-old Kimberly Waters, as well as burglary with assault or battery, kidnapping a child under thirteen years of age, and sexual battery on a child under twelve years of age. The murder conviction was based on Davis' confession and several pieces of incriminating evidence linking Davis to the crime, including DNA evidence that revealed Davis' DNA matched scrapings taken from the victim's fingernails and blood on boots found in Davis' recently vacated trailer that was consistent with the victim's blood. After the jury unanimously recommended the death penalty, the trial court imposed a sentence of death for the murder conviction. The trial court found that the following aggravators applied to the murder: (1) the murder was committed by a person under sentence of imprisonment; (2) the murder was committed during the commission of a kidnapping and sexual battery; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest; and (4) the murder was especially heinous, atrocious, or cruel. Davis v. State, 698 So. 2d 1182, 1187 (Fla. 1997). As statutory mitigation, the trial court found that the murder was committed "while the defendant was under the influence of extreme mental or emotional disturbance and gave this factor great weight." Id. In addition the trial court found several nonstatutory mitigating circumstances.[1]

---

1. Specifically, the trial court found: (1) Davis was capable of accepting responsibility for his actions and showed remorse for his conduct in this case and offered through his attorneys to plead guilty (assigned medium weight); (2) Davis

- 2 -

This Court affirmed Davis' convictions and death sentence on direct appeal. Id. at 1194. Davis subsequently filed a motion for postconviction relief, which the circuit court denied following an evidentiary hearing. On appeal, this Court affirmed the circuit court's denial of postconviction relief and denied Davis' accompanying petition for a writ of habeas corpus. Davis v. State, 875 So. 2d 359, 374 (Fla. 2003). Additionally, Davis sought habeas corpus relief in the federal courts, which was also denied. Davis v. McNeil, No. 8:04–cv–2549–T–27MAP, 2009 WL 860628, at *44 (M.D. Fla. Mar. 30, 2009). Following the federal district court's denial of his petition for a writ of habeas corpus, Davis sought a certificate of appealability, which was subsequently denied by the Eleventh Circuit Court of Appeals. Davis v. Sec'y Dep't of Corr., No. 09–11907–P (11th Cir. Sept. 8, 2009).

---

exhibited good behavior while in jail and prison (assigned little weight); (3) Davis demonstrated positive courtroom behavior (assigned very little weight); (4) Davis is capable of forming positive relationships with family members and others (assigned very little weight); (5) Davis had no history of violence in any of his past criminal activity (assigned very little weight); (6) Davis did not plan to kill or sexually assault the victim when he began his criminal conduct (assigned very little weight); (7) Davis cooperated with the police, confessed his involvement in this crime, did not resist arrest, and did not try to flee or escape (assigned little weight); (8) Davis has always confessed to crimes he has been arrested for in the past, accepted his responsibility, and pled guilty (assigned medium weight); (9) Davis suffered from the effects of being placed in institutional settings at an early age and by spending a significant portion of his life in such settings (assigned very little weight); and (10) Davis obtained his GED while in prison and participated in other self-improvement programs (assigned medium weight). Id.

- 3 -

On June 2, 2014, Governor Rick Scott signed a death warrant for Davis, and the execution was set for July 10, 2014. Subsequently, Davis filed a successive motion for postconviction relief, pursuant to Florida Rule of Criminal Procedure 3.851, in which he raised the following three claims: (1) an as-applied challenge to Florida's lethal injection protocol based on his allegation that he suffers from the medical condition porphyria; (2) that he is not eligible for the death penalty because, although age twenty-five at the time of the murder, he was "the functional equivalent of a child"; and (3) that his clemency proceedings were unconstitutional. The circuit court denied each of Davis' claims without holding an evidentiary hearing. In summarily denying Davis' challenge to Florida's lethal injection protocol, the circuit court stated that Davis had "not met his burden to demonstrate that the risk to him is sure or very likely to cause serious illness and needless suffering" because Davis had "not provided the Court with any evidence that the injection of Midazolam [as the first drug in the protocol] will not have the desired effect of rendering the Defendant unconscious and insensate and thereby eliminating any pain on the part of the Defendant as a result of his possible condition of suffering from Porphyria."

Davis appealed the circuit court's order, arguing that the circuit court erred in summarily denying his three claims, and also filed a motion for stay of execution. Along with his motion for stay of execution, Davis attached an

affidavit, which he had not produced during the circuit court proceedings, alleging that he suffers from the medical condition porphyria, and that the use of midazolam hydrochloride as the first drug of Florida's lethal injection protocol, as applied to him, is unconstitutional. Specifically, the affidavit of Dr. Joel Zivot stated that it is his expert medical opinion "that a substantial risk exists that, during the execution, Mr. Davis will suffer from extreme or excruciating pain as a result of abdominal pain, tachycardia, hypertension, nausea, and vomiting." Based on the allegations in the affidavit and our constitutional obligation to ensure that the method of lethal injection in this state comports with the Eighth Amendment, we relinquished jurisdiction to the circuit court, consistent with our prior decisions in Howell v. State, 133 So. 3d 511, 515 (Fla.), cert. denied, 134 S. Ct. 1376 (2014), and Henry v. State, 134 So. 3d 938, 944 (Fla.), cert. denied, 134 S. Ct. 1536 (2014), to permit the parties and the circuit court to address the allegations in Dr. Zivot's affidavit, as related to Davis' as-applied challenge. See Davis v. State, No. SC14-1178 (Fla. Sup. Ct. order filed June 26, 2014). After holding a hearing and taking testimony, the circuit court ultimately denied Davis' claim.

In addition to his claim on appeal regarding the circuit court's denial of his as-applied challenge to Florida's lethal injection protocol, Davis also asserts that it was error for the circuit court to allow the State's expert, Dr. Roswell Lee Evans, to render an expert opinion regarding Davis' as-applied challenge. Further, Davis

- 5 -

also appeals the circuit court's summary denial of his claims regarding his eligibility for the death penalty and the constitutionality of his clemency proceedings. For the reasons that follow, we affirm the postconviction court's denial of relief and deny Davis' motion for stay of execution.

## ANALYSIS

Before this Court, Davis argues that the circuit court erred in denying his as-applied challenge to Florida's lethal injection protocol, and that the circuit court erred in summarily denying his remaining two claims: that he is not eligible for the death penalty because, although age twenty-five at the time of the murder, he "was the functional equivalent of a child" and that his constitutional rights were violated during the clemency proceedings. We address each claim in turn.

### As-Applied Challenge to Florida's Lethal Injection Protocol

In his first issue on appeal, Davis argues that the circuit court erred in denying his as-applied challenge to Florida's lethal injection protocol. Davis contends that because he allegedly suffers from a medical condition called porphyria, the use of midazolam hydrochloride as the first drug of Florida's lethal injection protocol, as applied to him, is unconstitutional. "[M]ixed questions of law and fact that ultimately determine constitutional rights should be reviewed by appellate courts using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue."

Henry, 134 So. 3d at 946 (quoting Connor v. State, 803 So. 2d 598, 605 (Fla. 2001)).

As this Court has repeatedly recognized, "in order to prevail on an Eighth Amendment challenge, a claimant must show that 'the conditions presenting the risk must be sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers.' " Howell, 133 So. 3d at 521 (quoting Pardo v. State, 108 So. 3d 558, 562 (Fla. 2012)). "In other words, 'there must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment.' " Id. (quoting Pardo, 108 So. 3d at 562). "This heavy burden is borne by the defendant—not the State." Id.

As an initial matter, Davis contends that it was error for the circuit court to allow the State's expert, Dr. Evans, to testify with respect to Davis' as-applied challenge to Florida's lethal injection protocol. Specifically, Davis asserts that because Dr. Evans is not an anesthesiologist and has no experience treating patients with porphyria or in administering midazolam, his testimony on Davis' as-applied challenge was pure speculation.

With respect to when the introduction of expert testimony is proper, section 90.702, Florida Statutes (2013), provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in

issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

This Court has previously stated that, "[t]he qualification of a person as an expert is within the sound discretion of the trial judge." Penalver v. State, 926 So. 2d 1118, 1134 (Fla. 2006). Further, a trial court "has broad discretion in determining the range of the subjects on which an expert can testify, and the trial judge's ruling will be upheld absent a clear error." Id.

The record indicates that Dr. Evans' educational background, academic experience, and clinical experience were presented prior to his testimony. Although defense counsel objected to Dr. Evans being called as an expert in pharmacology, the circuit court overruled defense counsel's objection after allowing the defense to undertake voir dire and hearing additional testimony regarding Dr. Evans' qualifications. The record demonstrates that Dr. Evans' background along with his review of pertinent scientific literature allowed him to assist the finder of fact in addressing Davis' as-applied challenge to Florida's lethal injection protocol. Accordingly, we conclude that it was not error for the circuit court to allow Dr. Evans to testify as an expert in this case with respect to Davis'

as-applied challenge to Florida's lethal injection protocol. Alternatively, even if the circuit court did not consider Dr. Evans' testimony, Davis would still be unable to carry his burden of proof for this claim because Dr. Zivot failed to demonstrate that the injection of midazolam, as the first drug in the lethal injection protocol, would not render Davis unconscious and insensate prior to him experiencing any possible symptoms of a porphyria attack.

At the June 30, 2014, hearing, the circuit court assumed, for purposes of this claim, that Davis suffers from the medical condition alleged in Dr. Zivot's affidavit, even though no finding was made to this effect. In support of his claim, Davis called Dr. Zivot, the Medical Director of the Cardiothoracic Intensive Care Unit at Emory University Hospital and a faculty member of the Department of Anesthesiology and Surgery at Emory University School of Medicine. The circuit court summarized Dr. Zivot's testimony as follows: "Dr. Zivot testified that, in his opinion, the injection of 500 mg of midazolam will cause an increased accumulation of porphyrin in Mr. Davis' tissues and the possible acute onset of porphyria symptoms including abdominal pain, tachycardia, high blood pressure, nausea, possible vomiting and resulting pain from those symptoms."

In response, the State called Dr. Evans, a doctor of pharmacology who is a dean and professor at the Harrison School of Pharmacy at Auburn University. The circuit court summarized Dr. Evans' testimony as follows:

Dr. Evans testified that the injection of midazolam will cause the Defendant to go into a state of unconsciousness within the time it takes for a person to count to ten and then backwards to zero. A person injected with 500 mg of midazolam will be totally unconscious within two to three minutes and in a comatose state soon thereafter. Dr. Zivot agreed that the person injected with the large dose [of] midazolam will be unconscious within two to three minutes.

After considering this testimony and argument from the parties, the circuit court denied Davis' as-applied challenge, rejecting the claim that Davis' execution would violate the Eighth Amendment:

> In this case, the Defendant has not met his heavy burden to establish that he is "sure or very likely" to experience serious illness or needless suffering. The very purpose of the initial injection of midazolam is to render the Defendant unconscious before further proceeding with the execution. There is a chance that the Defendant may suffer an acute onset of porphyria by an accumulation of porphyrin in his tissues which could lead to the onset of pain but, based on the evidence presented, it is the Court's conclusion that the effects of midazolam will have rendered the Defendant unconscious and probably comatose by the time there is any risk of pain. The Defendant will be both unconscious and insensate before he would experience any possible onset of pain or a porphyria attack.

We conclude that the circuit court's factual findings are supported by competent, substantial evidence, and that the circuit court did not err in its legal conclusions. Dr. Evans testified that having porphyria will not "interfere with [Davis'] ability to be placed unconscious and rendered insensate" by the injection of midazolam. Dr. Evans further testified that midazolam will render an individual unconscious within the span of time necessary to count down from ten to one, and would effectively place an individual in a coma within "5 to 10 minutes." Dr.

- 10 -

Zivot similarly testified that fifty milligrams of midazolam, which is ten times less than the dose administered under Florida's lethal injection protocol, would render an individual unconscious within "a matter of a few minutes."

Although Dr. Zivot testified that the amount of midazolam contemplated by the execution protocol "will lead to a porphyria crisis," and a porphyria attack could "potentially" occur within minutes of the introduction of midazolam, Dr. Zivot did not present any evidence that this result was sure or very likely to occur. In fact, Dr. Zivot's testimony was directly refuted by Dr. Evans, who stated, in discussing how a porphyria attack proceeds, that "regardless of what drug is inducing the increased production of porphyrin, it's not an immediate response." Dr. Evans stated that it was his professional opinion that it was "highly unlikely" that Davis would suffer from the symptoms of a porphyria attack before the onset of the midazolam and, when asked whether an attack could take place within minutes, responded, "I don't think so. I think you're talking about hours and maybe days." The circuit court credited Dr. Evans' testimony that any possible porphyria attack would occur, if at all, only after Davis was rendered unconscious and insensate by the injection of midazolam.

Davis has not demonstrated that Florida's lethal injection protocol—as applied to him—violates the Eighth Amendment to the United States Constitution because he has not shown that allegedly suffering from porphyria creates a

"substantial risk of serious harm." Howell, 133 So. 3d at 521. Specifically, Davis has not met his "heavy burden" to show that the injection of midazolam in the amount prescribed by the lethal injection protocol will not render him unconscious and insensate before he suffers any of the effects of a possible porphyria attack.

Accordingly, the postconviction court did not err in denying Davis' as-applied challenge to Florida's lethal injection protocol, and we affirm the circuit court's denial of relief. Additionally, for the same reasons that we conclude the circuit court did not err in denying relief on this claim, we deny Davis' motion for stay of execution, which is premised on the same as-applied challenge to Florida's lethal injection protocol. See Buenoano v. State, 708 So. 2d 941, 951 (Fla. 1998) (explaining that a stay of execution on a successive motion for postconviction relief is warranted only where there are substantial grounds upon which relief might be granted).

**Ineligibility for the Death Penalty**

In Davis' second claim on appeal, he asserts that he is ineligible for the death penalty, relying on allegedly newly discovered evidence regarding the effects of alcoholism and sexual abuse on brain development in children, and the United States Supreme Court's decision in Roper v. Simmons, 543 U.S. 551, 578 (2005), which held that "the Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were

- 12 -

committed." Although he acknowledges that he was actually twenty-five years old when he committed the crimes, Davis contends that he "was the functional equivalent of a child" because he "likely had the mind of a juvenile" as opposed to his actual chronological age, and thus, his execution would be unconstitutional.

In addressing a similar constitutional challenge to a defendant's death sentence premised on Roper, this Court stated in Schoenwetter v. State, 46 So. 3d 535, 561 (Fla. 2010), that we have "consistently rejected such claims in cases where the defendant was not below eighteen years of age at the time of the criminal offense." Thus, because this Court has held that "Roper only prohibits the execution of those defendants whose chronological age is below eighteen," Hill v. State, 921 So. 2d 579, 584 (Fla. 2006), Davis' challenge is without merit.

While Davis acknowledges that he was over the age of eighteen at the time of the crimes, he nevertheless asks this Court to reconsider its precedent on the issue based on allegedly newly discovered evidence, consisting of recently published studies addressing the effects of alcoholism and sexual abuse on brain development, that he asserts illustrate that he "was the functional equivalent of a child," which renders him ineligible for the death penalty. Davis also "requests a stay from execution, and an evidentiary hearing to litigate the weight to be afforded the statutory and non-statutory mitigators related to age and maturity levels" in light of the recently published studies.

After thoroughly reviewing the record, we cannot find any indication that Davis ever previously argued or presented any evidence regarding his claim that he was the "functional equivalent of a child" at the time of the murder. At trial, Davis' theory of mitigation, as found by the trial court, was that he committed the murder while he was under the influence of an extreme mental or emotional disturbance. See Davis, 698 So. 2d at 1187. In finding the existence of this mitigating circumstance, the trial court stated that

> it is apparent to this Court the defendant came from a dysfunctional family; the defendant is an alcoholic, with low self-esteem; the defendant had an abused, neglected childhood; the defendant has had learning disabilities, which he has overcome; the defendant is immature for his age; the defendant may have an anti-social personality disorder; the defendant may have suffered from post-traumatic stress disorder; the defendant has suffered from chronic depression and anxiety; the defendant has had poor impulse control and defective judgment at times and the defendant has suffered from attention deficit hyperactivity disorder.

State v. Davis, No. CF94–1248A1–XX (Fla. 10th Jud. Cir. Ct. order filed June 30, 1995).

Further, on direct appeal and in seeking postconviction relief, Davis did not assert any claims analogous to the one he now raises before this Court, after the signing of his death warrant. Instead, on direct appeal, Davis failed to raise a claim involving his "emotional development," see Davis, 698 So. 2d 1182, and, in his postconviction proceedings, Davis argued with respect to his mental health only that his penalty-phase counsel was ineffective for failing to present expert

- 14 -

testimony on post-traumatic stress disorder that Davis suffered as a result of prior sexual abuse. See Davis, 875 So. 2d at 369. Further, between the time of the Roper decision in 2005 and these post-warrant proceedings, Davis has never raised a claim based on Roper.

Rule 3.851 provides the applicable pleading requirements for initial and successive postconviction motions. Fla. R. Crim. P. 3.851(e)(1)-(2). Davis' post-warrant motion is subject to the rules governing postconviction motions, which require the defendant to submit "a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought." Parker v. State, 89 So. 3d 844, 855 (Fla. 2011) (quoting Fla. R. Crim. P. 3.851(e)(1)(D)).

An evidentiary hearing on a rule 3.851 motion "should be held 'whenever the movant makes a facially sufficient claim that requires a factual determination.' " Pardo, 108 So. 3d at 560 (quoting Parker, 89 So. 3d at 855). "However, '[p]ostconviction claims may be summarily denied when they are legally insufficient, should have been brought on direct appeal, or are positively refuted by the record.' " Id. at 560-61 (quoting Parker, 89 So. 3d at 855). Because the circuit court denied Davis' claim without holding an evidentiary hearing, we review the circuit court's decision de novo, "accepting [Davis'] factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that [Davis] is entitled to no relief." Gore v. State,

- 15 -

91 So. 3d 769, 774 (Fla.) (quoting <u>Walton v. State</u>, 3 So. 3d 1000, 1005 (Fla. 2009)), <u>cert. denied</u>, 132 S. Ct. 1904 (2012).

This Court has set forth a two-prong test that a defendant must satisfy in order to obtain relief based on newly discovered evidence:

> First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.

<u>Marek v. State</u>, 14 So. 3d 985, 990 (Fla. 2009) (citing <u>Jones v. State</u>, 709 So. 2d 512, 521 (Fla. 1998)). "If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence." <u>Id.</u>

The studies cited by Davis, addressing the effects of alcoholism and sexual abuse on brain development, do not constitute newly discovered evidence. This Court has previously stated that it "has not recognized 'new opinions' or 'new research studies' as newly discovered evidence." <u>Schwab v. State</u>, 969 So. 2d 318, 325 (Fla. 2007). The articles that Davis relies upon fall squarely within this subject area and therefore do not constitute newly discovered evidence. <u>See</u> <u>Farina v. State</u>, 992 So. 2d 819 (Fla. 2008) (table decision) (holding that a "study on brain mapping is not newly discovered evidence"); <u>Schwab</u>, 969 So. 2d at 325

(concluding that "two recent scientific articles regarding brain anatomy and sexual offense" did not constitute newly discovered evidence).

Further, as explained above, even if these recently published articles were considered newly discovered evidence, Davis still fails to put forth a cognizable claim. The United States Supreme Court's decision in Roper prohibits the execution of those individuals "who were under the age of 18 when their crimes were committed." 543 U.S. at 578. In interpreting the Supreme Court's decision, this Court has previously stated that "Roper only prohibits the execution of those defendants whose chronological age is below eighteen." Hill, 921 So. 2d at 584. Therefore, because Davis was over the age of eighteen when he committed murder, Roper does not apply, and his claim is without merit.

Accordingly, we affirm the circuit court's summary denial of relief on this claim.

### **Clemency Proceedings**

In his final claim on appeal, Davis challenges the constitutionality of his clemency proceedings. With respect to this claim, Davis does not contend that he was completely denied clemency review. In fact, Davis concedes that he was selected for clemency review determination in 2013, and that he did in fact receive an interview before the Florida Commission on Offender Review (formerly known as the Florida Parole Commission), during which he was represented by counsel

- 17 -

from the Office of the Polk County Public Defender. Further, Davis does not contest that his death warrant specifically includes language stating that "executive clemency . . . was considered pursuant to the Rules of Executive Clemency and it has been determined that executive clemency is not appropriate."

Nevertheless, Davis asserts that his due process rights were violated during the clemency proceedings because one of the parole commissioners present during Davis' interview before the Florida Commission on Offender Review was retired. Davis also argues that communications between the Polk County State Attorney and Assistant General Counsel for Governor Scott prior to Davis' clemency proceedings, in which the Office of the Governor expressed disapproval of Davis' crimes, illustrate that Governor Scott was predisposed to denying Davis clemency relief and call into question the validity of his clemency proceedings. The circuit court summarily denied this claim without holding an evidentiary hearing. We agree with the circuit court and conclude that these arguments are without merit for several reasons.

With respect to Davis' first argument, section 947.04(1), Florida Statutes (2013), specifically authorizes the chair of the Florida Commission on Offender Review to "assign consenting retired commissioners or former commissioners to temporary duty when there is a workload need." The record indicates that the retired parole commissioner at issue in this case was temporarily assigned for duty

in conformance with section 947.04(1). "In <u>Ohio Adult Parole Authority v. Woodard</u>, 523 U.S. 272 (1998), five justices of the United States Supreme Court concluded that some minimal procedural due process requirements should apply to clemency proceedings." <u>Marek v. State</u>, 14 So. 3d 985, 998 (Fla. 2009). However, the Court explained that "none of the opinions in that case required any specific procedures or criteria to guide the executive's signing of warrants for death-sentenced inmates." <u>Id.</u> Accordingly, in light of the fact that Davis concedes that he was selected for clemency review determination in 2013, and that he did in fact receive an interview before the Florida Commission on Offender Review, during which he was represented by counsel, and the assignment of retired parole commissioners to temporary duty is specifically authorized by statute, Davis has not provided any basis for this Court to grant relief based on his first argument.

Further, as this Court has previously noted, "[t]he clemency process in Florida derives solely from the Florida Constitution and [this Court has] recognized that the people of the State of Florida have vested 'sole, unrestricted, unlimited discretion exclusively in the executive in exercising this act of grace.' " <u>Carroll v. State</u>, 114 So. 3d 883, 888 (Fla.) (quoting <u>Sullivan v. Askew</u>, 348 So. 2d 312, 315 (Fla. 1977)), <u>cert. denied</u>, 133 S. Ct. 2762 (2013). Indeed, "[t]he Florida Rules of Executive Clemency expressly provide that '[t]he Governor has the <u>unfettered discretion</u> to deny clemency at any time, for any reason.' " <u>Gore</u>, 91 So.

- 19 -

3d at 779 (quoting Fla. R. Exec. Clem. 4) (second alteration in original). Accordingly, this Court "will not generally second-guess the executive's determination that clemency is not warranted." Pardo, 108 So. 3d at 568.

In its order denying relief on this claim, the circuit court based its denial on these general principles, stating as follows: "Clemency reviews and proceedings are within the exclusive purview of the Executive Branch. It is not up to the Judicial Branch to second guess the Executive Branch in this regard, and the Judicial Branch must respect the separation of powers between the branches of government." This conclusion is fully consistent with this Court's precedent. See Johnston v. State, 27 So. 3d 11, 26 (Fla. 2010) (declining to "depart from the Court's precedent, based on the doctrine of separation of powers, in which we have held that it is not our prerogative to second-guess the executive on matters of clemency in capital cases"); Rutherford v. State, 940 So. 2d 1112, 1122-23 (Fla. 2006) (denying a clemency claim because the defendant had a hearing and because clemency is an executive function). Davis concedes that he was selected for clemency review determination in 2013 and that he did in fact receive an interview before the Florida Commission on Offender Review. In light of the fact that his death warrant, signed by the Governor, makes clear that "executive clemency . . . was considered pursuant to the Rules of Executive Clemency and it has been determined that executive clemency is not appropriate," this Court will not

"second-guess the executive's determination that clemency is not warranted."

Pardo, 108 So. 3d at 568.

Accordingly, we conclude that the circuit court did not err in summarily denying this claim.[2]

**CONCLUSION**

For the reasons stated above, we affirm the circuit court's denial of Davis' successive motion for postconviction relief. Additionally, we deny Davis' motion for a stay of execution. No motion for rehearing will be entertained by this Court. The mandate shall issue immediately.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

An Appeal from the Circuit Court in and for Polk County,
    Donald G. Jacobsen, Judge - Case No. 1994-CF-1248A-XX

2. While this appeal was pending before this Court, Davis' clemency counsel filed a notice of joinder or, alternatively, a motion to intervene in Davis' appeal of the denial of his successive postconviction motion, which this Court struck after receiving a response from the State. Subsequently, Davis, through clemency counsel, filed in the circuit court an "Emergency Petition for a Writ of Mandamus or Common Law Certiorari and Complaint for Declaratory, Injunctive and Other Relief Pursuant to 42 USC § 1983" against Governor Rick Scott, Attorney General Pam Bondi, Chief Financial Officer Jeff Atwater, and Commissioner of Agriculture Adam Putnam, as members of the Clemency Board of Florida. In this filing, Davis also challenged the constitutionality of his clemency proceedings. The circuit court denied Davis' petition on July 1, 2014. Davis, represented by clemency counsel, appealed the circuit court's denial of his petition to this Court, which we have treated as a petition to invoke this Court's all writs jurisdiction. By separate order, we have denied clemency counsel's petition.

Ali Andrew Shakoor and Richard E. Kiley, Assistant Capital Collateral Regional Counsels – Middle Region, Tampa, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Stephen D. Ake and Timothy A. Freeland, Assistant Attorneys General, Tampa, Florida,

for Appellee