# Supreme Court of Florida

_____

No. SC2025-0585
_____

**GLEN EDWARD ROGERS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

May 8, 2025

PER CURIAM.

Glen Edward Rogers murdered Tina Marie Cribbs in Hillsborough County in 1995. On April 15, 2025, Governor Ron DeSantis signed Rogers' death warrant, scheduling his execution for May 15, 2025. Rogers sought relief, filing his fourth successive postconviction motion in the circuit court raising three claims: (1) he was unconstitutionally deprived of the right to challenge his conviction and sentence due to Capital Collateral Regional Counsel – Middle Region (CCRC-M) representing him under a conflict of interest; (2) newly discovered evidence of his childhood sexual

abuse and trafficking establishes significant mitigation that would result in a life sentence on remand; and (3) Florida's lethal injection procedures as applied to him are cruel and unusual due to his porphyria diagnosis. The postconviction court summarily denied Rogers' claims as untimely, procedurally barred, and/or meritless which Rogers now appeals.[1] We agree and affirm. We also deny Rogers' motion for stay of execution and request for oral argument filed in this Court.

## I. Background

As recounted in Rogers' direct appeal, *Rogers v. State* (*Rogers I*), 783 So. 2d 980 (Fla. 2001), Rogers arrived by cab at a motel in Tampa on November 4, 1995, telling the clerk that he was a truck driver whose truck had broken down. He booked in for two nights, then visited the Showtown Bar the next day, where he met the victim, Cribbs. He eventually asked Cribbs to give him "a ride," and she agreed. Later that evening, Rogers went to the motel clerk, paid for an extra night, and requested no cleaning for the next day.

---

1. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

- 2 -

The next morning, the motel clerk saw Rogers leave in what was later established as Cribbs' vehicle. Later that afternoon, maintenance workers at a rest area off Interstate-10 near Tallahassee found Cribbs' wallet. There were two latent fingerprints inside matching Rogers.

A day later, a cleaning person at the Tampa motel went to Rogers' room and noticed a handwritten "Do Not Disturb" sign. After entering the room, the cleaner discovered Cribbs' body in the bathtub. Cribbs had been stabbed once in the chest and once in the buttocks. The State's forensic pathologist later testified that the stab wounds were L-shaped wounds, indicating that the perpetrator had inserted a very long knife, then after an interval, twisted the instrument to a perfect 90-degree angle, then pulled it out. These stab wounds were both deliberate and fatal, slicing through major arteries that caused Cribbs to bleed out.[2] She was stabbed with her clothing on and was conscious.

---

2. Testimony at trial revealed that the wound to the chest measured eight-and-a-half inches in length and cut through the large-caliber pulmonary arteries, veins, and one of the large terminal bronchi (airway to the lower lung). The wound proceeded to cut along the back of the chest wall between ribs eight and nine.

In addition to these injuries, Cribbs had several bruises and abrasions and a shallow wound to her left arm that appeared to be a defensive wound. Other physical evidence collected from the motel room also pointed to Rogers, as detailed in *Rogers I*, 783 So. 2d 980.

After law enforcement apprehended Rogers in Kentucky, the State of Florida charged him with first-degree murder, armed robbery, and grand theft of a motor vehicle. *Id.* at 985-86. Following trial, the jury found Rogers guilty as charged on all three offenses. *Id.* at 987.

Rogers' penalty phase proceeding and subsequent postconviction history were briefly summarized in our opinion affirming Rogers' last postconviction appeal in 2021:

> At the ensuing penalty phase, Rogers called a number of witnesses, including two experts—Dr. Michael Maher (a psychiatrist) and Dr. Robert Berland (a forensic psychologist). [*Rogers I*, 783 So. 2d] at 995-96. Each

---

The direction of the wound went backward, slightly to the right and upward.

The other stab wound, to the buttock, measured nine-and-a-half inches in length. It went through the muscles and fat, through the sciatic notch of the pelvis and incised and cut through a portion of the right internal iliac artery (a large-caliber vessel that feeds the right leg). The wound continued up into the abdomen and penetrated tissue near the intestines.

opined that Rogers suffers from brain damage and mental-health issues, including a rare genetic mental disorder called porphyria. *Id.* [Porphyria is a disease that "impacts the central nervous system and can cause psychosis and strokes." *Id.* at 995.] Rogers also presented the testimony of Claude Rogers, one of his older brothers.

After the presentation of mitigating evidence, the penalty-phase jury unanimously recommended a sentence of death. *Id.* at 987. Accepting that recommendation, the trial court sentenced Rogers to death. *Id.*

Rogers appealed, but this Court affirmed in all respects. *Id.* at 1004. Since that time, Rogers has sought postconviction relief both in state and federal court—obtaining no relief in either forum. *See Rogers v. State* [(*Rogers II*)], 957 So. 2d 538, 556 (Fla. 2007) (affirming denial of initial postconviction motion and denying habeas petition)[3]; *Rogers v. Sec'y, Dep't of Corr.*, No. 8:07-CV-1365-T-30TGW, 2010 WL 668261 (M.D. Fla. Feb. 19, 2010) (denying federal habeas relief); *Rogers v. State* [(*Rogers III*)], 97 So. 3d 824 (Fla. 2012) (affirming summary denial of first successive postconviction motion); *Rogers v. State* [(*Rogers IV*)], 235 So. 3d 306 (Fla. 2018) (affirming summary denial of second successive postconviction motion).

*Rogers v. State* (*Rogers V*), 327 So. 3d 784, 786 (Fla. 2021).

---

3. In *Rogers II*, we denied Rogers' habeas claim that he may be incompetent at the time of execution, noting that it would not be ripe for review until a death warrant had been issued. 957 So. 2d at 556 (citing *Griffin v. State*, 866 So. 2d 1, 21-22 (Fla. 2003)). At this time, Rogers has not challenged his competency to be executed.

In *Rogers V*, we affirmed the denial of Rogers' third successive postconviction motion raising a claim of newly discovered evidence concerning several instances of childhood sexual abuse he allegedly experienced over the course of several years in Hamilton, Ohio, and at the Training Institute of Central Ohio (TICO). *Id.* Rogers asserted that his memories of the abuse had been repressed until 2019, when he discussed his case history in detail with clemency counsel and a psychological criminologist, Dr. Bryanna Fox. *Id.* He also pointed to existing articles about the rampant abuse at TICO. *Id.* at 788. We agreed with the postconviction court's finding that this evidence could have been discovered with due diligence as his family members were aware of the alleged sexual abuse, and articles about TICO were available. *Id.* at 787-88.

In 2021, Rogers joined a federal suit raising a 42 U.S.C. § 1983 claim with other inmates against the Chief Justice of the Florida Supreme Court, in his official capacity, asserting that section 27.711(12), Florida Statutes, contains "a state-created right to advise the Florida Supreme Court about the quality of their capital collateral regional counsel" and that the "court's rules and policies prohibiting them from filing pro se pleadings violated the

procedural component of the Due Process Clause." *See Sweet v. Chief Just. of Fla. Sup. Ct.*, No. 23-13025, 2025 WL 915740, at *1 (11th Cir. Mar. 26, 2025). The district court dismissed the federal complaint, and the Eleventh Circuit Court of Appeals affirmed. *Id.* at *4-5. At this time, there is no petition for review pending in the United States Supreme Court.

As stated earlier, on April 15, 2025, Governor DeSantis issued a death warrant for the execution of Rogers, scheduling it for Thursday, May 15, 2025, at 6:00 p.m. On April 20, 2025, Rogers filed his fourth successive postconviction motion raising three claims, which the postconviction court summarily denied as untimely, procedurally barred, or meritless.

On appeal, Rogers asserts the postconviction court erred in summarily denying each of his three claims. We find no error and affirm.

## II. Analysis

We review the circuit court's summary denial of a Florida Rule of Criminal Procedure 3.851 motion de novo, "accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record

conclusively shows that the movant is entitled to no relief." *Zack v. State*, 371 So. 3d 335, 344 (Fla. 2023) (quoting *Owen v. State*, 364 So. 3d 1017, 1022-23 (Fla. 2023)).

Summary denial of a successive rule 3.851 motion is appropriate if "the motion, files, and records in the case conclusively show that the movant is entitled to no relief." *Id.* (quoting *Owen*, 364 So. 3d at 1022). A postconviction court may also appropriately summarily dismiss untimely or procedurally barred claims under the rule, too. *Id.* (citing Fla. R. Crim. P. 3.851(e)(2)).

With limited exceptions, rule 3.851(d)(1) imposes a one-year time limitation on any motion to vacate a final judgment and sentence of death. Relevant here is an exception to this one-year limitation, when "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." Fla. R. Crim. P. 3.851(d)(2)(A).

### A. Rogers' Rule 3.851 Conflict-of-Counsel Claim

Rogers claims the postconviction court erred by summarily denying his rule 3.851 claim that his constitutional rights are

violated by the denial of CCRC-M's motion to withdraw based on an actual, active conflict of interest. Rogers challenged the quality of CCRC's statewide representation in federal court[4] and now wants to litigate claims against CCRC-M's past performance and competence in state court, which are claims CCRC-M cannot ethically raise. CCRC-M asserted in its motion to withdraw that due to the pendency of federal litigation, Rogers had not communicated with CCRC-M from July 2021 until the day after his death warrant was signed.

The postconviction court denied both CCRC-M's motion to withdraw[5] and the subsequent claim raised in Rogers' fourth successive postconviction motion as both procedurally barred and meritless. We agree.[6]

---

4. Rogers says that his federal claims did not argue ineffective assistance of counsel but requested that "the Florida Supreme Court establish the appropriate procedures required by the Legislature."

5. CCRC-M initially moved to withdraw at the scheduling conference, just two days after the warrant was signed. That motion was denied, and Rogers reraised the claim in his fourth successive postconviction motion.

6. On May 2, 2025, in anticipation of seeking further federal review, Rogers filed a motion in federal district court for the

- 9 -

As to the procedural bar,[7] although Rogers ceased communication with CCRC-M in July 2021 and had no pending state court litigation at the time the federal complaint was filed, CCRC-M still represented Rogers and could have filed a motion seeking withdrawal but did not.  As we have said, in an active warrant case, a postconviction claim that could have been raised in a prior proceeding is procedurally barred.  *See Barwick v. State*, 361 So. 3d 785, 795 (Fla. 2023).  And given the procedural bar, we are leery that CCRC-M's motion to withdraw is a delay tactic.  *See Howell v. State*, 109 So. 3d 763, 775 (Fla. 2013) ("If this Court were to allow the last[-]minute substitution of counsel to create a

---

appointment of conflict-free counsel.  On May 6, 2025, finding the motion to be premature "[b]ecause neither a motion, under Rule 60(b) Federal Rules of Civil Procedure, nor a Section 2254 petition is pending," the district court deferred ruling on Rogers' motion and permitted him the opportunity to file an amended motion.  *See Rogers v. Sec'y, Dep't of Corr.*, No. 8:07-cv-1365-MSS-TGW (M.D. Fla. May 6, 2025).

7.  The postconviction court also found the requests to withdraw to be untimely, which we treat as subsumed within the procedural bar.  While strict time limitations apply to Rogers' rule 3.851 claim, counsel's earlier motion to withdraw is only untimely because it could have been raised sooner but was not.  To the extent CCRC-M is renewing its earlier motion to withdraw in the postconviction motion, we review it for an abuse of discretion.

- 10 -

situation in which the entire case could be relitigated at the time the death warrant was signed . . . this could become a standard delay tactic in any death warrant case.").

Furthermore, this claim is without merit, first, because there is no actual conflict with CCRC-M's representation based on the federal litigation. Because the federal litigation challenged the "court's rules and policies prohibiting [him] from filing pro se pleadings" on due process grounds, *see Sweet*, 2025 WL 915740, at *1, and did not contest the ability of CCRC-M to represent Rogers' interests in state court, we agree with the postconviction court's conclusion that there was no actual conflict.

Second, there is no actual conflict with CCRC-M based on Rogers' desire to now litigate claims against the past performance and competence of CCRC-M because such attacks are not permissible. Section 27.703(1), Florida Statutes, permits a sentencing court to determine if an "actual conflict" exists and, if so, first requires the appointment of a different regional counsel (CCRC); if the sentencing court determines the other region has an "actual conflict," then it may appoint non-CCRC counsel. An "actual conflict" in the postconviction context generally involves

- 11 -

counsel's representation of a co-defendant or co-defendants[8] or counsel's connection to the defendant's case at trial.[9]  Such an "actual conflict" is the *only* basis for moving to discharge *postconviction* counsel in a capital case.  *See* Fla. R. Crim. P. 3.851(b)(6).

Here, Rogers has not demonstrated that CCRC-M has an *actual* conflict.  Rather, his desire to litigate CCRC-M's past performance and competence are claims of ineffective assistance of postconviction counsel, to which he acknowledges he has no constitutional right in Florida.  *See Zack v. State*, 911 So. 2d 1190, 1203 (Fla. 2005).  Additionally, chapter 27 specifically disavows providing a statutory right to raise ineffective assistance claims.

---

8.  *See, e.g.*, *Barclay v. Wainwright*, 444 So. 2d 956, 958 (Fla. 1984) ("Conflict-of-interest cases usually arise at the trial level, but, being caused by one attorney representing two or more clients, can arise at any level of the judicial process.  In general, an attorney has an ethical obligation to avoid conflicts of interest and should advise the court when one arises.").

9.  *See, e.g.*, *Braddy v. State*, 219 So. 3d 803, 817-18 (Fla. 2017) (affirming sentencing court's denial of CCRC's motion to withdraw where Braddy's CCRC counsel supervised the prosecutor at Braddy's trial and, thus, had an actual conflict of interest; however, counsel did not recall Braddy's case and never suggested he could not fairly represent him).

§ 27.7002(1), Fla. Stat. ("This chapter does not create any right on behalf of any person, provided counsel pursuant to any provision of this chapter, to challenge in any form or manner the adequacy of the collateral representation provided."); *Barwick*, 361 So. 3d at 791. Therefore, we agree with the postconviction court that Rogers has not raised an "actual conflict" with CCRC-M that necessitates the appointment of another region of CCRC, which is the initial remedy allowed by section 27.703(1).

We likewise reject Rogers' invitation to adopt a rule similar to the one adopted by the U.S. Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012) (ineffective assistance of state postconviction counsel can provide cause to forgive a procedural default for claims of ineffective assistance of trial counsel where the state requires such claims to be raised in the initial postconviction review proceeding). As we recently reiterated in *Hutchinson v. State*, "[w]e have . . . consistently recognized that *Martinez* applies solely in federal courts." 50 Fla. L. Weekly S71, S74, 2025 WL 1198037, at *6-7 (Fla. Apr. 25, 2025) (citing *Dailey v. State*, 279 So. 3d 1208, 1215 (Fla. 2019)), *cert. denied*, No. 24-7087, 2025 WL 1261217 (U.S. May 1, 2025). "What's more, *Martinez* only applied to a

- 13 -

certain type of defaulted claim—one that asserts ineffective assistance of *trial* counsel." *Id.* at S74, 2025 WL 1198037, at *7 (emphasis added) (citing *Davila v. Davis*, 582 U.S. 521, 530 (2017)).

Rogers also argues that he is being unfairly treated because Terance Valentine was granted conflict-free counsel by the same postconviction court for similar reasons and that order was upheld in *State v. Valentine*, No. SC17–629, 2017 WL 4160942 (Fla. Sept. 20, 2017). However, *Valentine* is distinguishable because the case presented in a different procedural posture, under a petition for review by the State of a *nonfinal* order, *see id.*; Fla. R. App. P. 9.142(c) (Petitions Seeking Review of Nonfinal Orders in Death Penalty Postconviction Proceedings), and the bar for obtaining relief in that posture is much higher than it is on appeal, *see Trepal v. State*, 754 So. 2d 702, 707 (Fla. 2000) (explaining that to obtain review on the merits of a nonfinal postconviction order the appellant must show *both* the order (1) failed to conform to the essential requirements of law *and* (2) could cause irreparable injury that cannot be remedied on appeal). That standard is not applicable here, to a final order. Notably, in a plenary appellate posture, we generally review an order denying counsel's motion to withdraw

under the highly deferential abuse of discretion standard. *See Weaver v. State*, 894 So. 2d 178, 187 (Fla. 2004) ("A [trial] court's decision involving withdrawal or discharge of counsel is subject to review for abuse of discretion."). Here, however, Rogers benefits from the de novo standard of review applicable to summary denials. *See Zack*, 371 So. 3d. at 344. Yet, we find no legal error in the postconviction court's ruling.

Because Rogers' claim that CCRC-M should have been permitted to withdraw is both procedurally barred and meritless, we find no error in the postconviction court's order.

**B. Newly Discovered Evidence of Childhood Sexual Abuse**

Rogers claims the postconviction court erred in denying his newly discovered evidence claim based on his history of childhood sexual abuse as procedurally barred because the claim is not identical to the one he raised in *Rogers V* and, thus, was not known to Rogers or his counsel. Though his claim is still based on his allegations that he was trafficked and sexually abused as a child in Hamilton, Ohio, and abused at TICO, *see Rogers V*, 327 So. 3d at 786, he asserts that his current claim is based on "new evidence" from the Florida Legislature reflecting "the conscience of Florida's

- 15 -

citizens in protecting children from the manner of abuse that Rogers suffered as a child" as the Legislature nears passage of Florida Bill number CS/CS/SB 1804, entitled "Capital Human Trafficking of Vulnerable Persons for Sexual Exploitation."[10] Rogers asserts that on remand, armed with the Legislature's new policy and various studies concerning child sex trafficking, he would receive a less severe sentence because his "highly mitigated case would result in a properly informed jury recommending a life sentence."

We find no merit to Rogers' argument and affirm the postconviction court's order. To prevail on a newly discovered evidence claim and avoid the one-year time limitation of rule 3.851(d)(1), Rogers had to show that the evidence was: "[1] unknown by the trial court, by the party, or by counsel at the time of trial and it could not have been discovered through due diligence, and . . . [2] is of such a nature that it would probably . . . yield a less severe sentence on retrial." *Cole v. State*, 392 So. 3d 1054,

---

10. Florida CS/CS/HB 1283 was laid on the table on April 30, 2025, and the Senate version, Florida CS/CS/SB 1804, was passed by both houses and enrolled. *See* Fla. CS/CS/SB 1804 (2025).

1061 (Fla.) (second omission in original) (quoting *Dillbeck v. State*, 357 So. 3d 94, 100 (Fla. 2023)), *cert. denied*, 145 S. Ct. 109 (2024).

As noted by the postconviction court, we said in *Cole* that newly enacted legislation did not constitute "newly discovered evidence." *Id.* ("Although CS/HB 21 was recently enacted, it does not amount to newly discovered evidence."). In *Cole*, we also rejected the proposition that new articles and scholarship constitute "newly discovered evidence," citing to *Rogers V* among other cases for that very proposition. *Id.* at 1061-62 ("Indeed, we have routinely held that resolutions, consensus opinions, articles, research, and the like do not satisfy the [newly discovered evidence] standard." (citing *Barwick*, 361 So. 3d at 793)); *see Barwick*, 361 So. 3d at 793 (holding that an American Psychological Association (APA) resolution did not constitute newly discovered evidence sufficient to overcome the one-year time limitation for filing postconviction claims); *Rogers V*, 327 So. 3d at 788 (numerous instances of childhood sexual abuse defendant allegedly experienced at [TICO] was not newly discovered evidence where articles discussing the abuse of juveniles at TICO could have been discovered by trial counsel well before the penalty phase).

- 17 -

Thus, we agree with the postconviction court's conclusion that, having failed to identify any new evidence, Rogers cannot avoid the one-year time limitation of rule 3.851(d)(1). We further agree with the postconviction court that Rogers' current claim is a variation of the claim he raised in *Rogers V* and is procedurally barred for that reason.

Further still, Rogers' claim is meritless because, as we stated in *Rogers V*, "trial counsel could have discovered the alleged evidence of abuse if due diligence had been exercised." 327 So. 3d at 788. "Rogers alleged that three of his brothers had knowledge that he was repeatedly abused over the course of several years in Hamilton, Ohio[,] and at TICO," and "that trial counsel knew of Rogers' . . . three siblings mentioned in Rogers' motion. . . . [A]s such, trial counsel could have asked them whether Rogers had been sexually abused as a child." *Id.*

To the extent Rogers challenges the constitutionality of rule 3.851(d)(1)'s time limitations as applied to him, a defendant under an active warrant, his argument is unpreserved because he failed to raise it below. *State v. Poole*, 297 So. 3d 487, 494 (Fla. 2020) ("In order to preserve an issue for appeal, the issue must be presented

to the lower court and the *specific legal argument* or grounds to be argued on appeal must be part of that presentation." (cleaned up)). We also recently rejected this claim on the merits in *Ford v. State,* 402 So. 3d 973, 977 (Fla.), *cert. denied,* 145 S. Ct. 1161 (2025), which held that Ford's request to find rule 3.851(d) inapplicable to defendants under an active death warrant was without any legal support. As we observed in *Ford,* "the Legislature provided 'that all terms and conditions of direct appeal and collateral review be strictly enforced, including the application of procedural bars, to ensure that all claims of error are raised and resolved at the first opportunity.' " *Id.* (quoting § 924.051(8), Fla. Stat.). Strict procedural bars apply because "[t]he litigation of a successive motion for postconviction relief filed by a defendant under an active death warrant is collateral review." *Id.* at 977-78.

Thus, we find no error in the postconviction court's conclusion that this claim is untimely, procedurally barred, and without merit.

## C. Method-of-Execution Challenge to Lethal Injection Protocol

Rogers claims the postconviction court erred in summarily denying his method-of-execution claim, arguing that Florida's lethal injection protocol is cruel and unusual punishment under the

Eighth Amendment as applied to him due to the substantial risk those procedures will cause him needless suffering due to his porphyria diagnosis. Rogers argues that his expert, Dr. Joel Zivot, reviewed Rogers' medical records and would have opined at an evidentiary hearing that: (1) Rogers suffers from porphyria; and (2) "Florida's lethal injection procedures place Rogers at a substantial risk of needless pain and suffering because he will experience a [p]orphyria attack in response to the administration of an extremely high dose of etomidate."[11] Rogers also claimed that execution by firing squad or gas chamber would be a less painful method. The postconviction court summarily denied this claim, finding it untimely and meritless. We agree.[12]

---

11. The State objects to Rogers' appendix to his Initial Brief that contains an affidavit from Dr. Zivot. The top of the affidavit shows it was prepared on April 18, 2025, before Rogers filed his successive postconviction motion, but the signature block indicates Dr. Zivot signed the document on April 26, 2025, after the postconviction court issued its order summarily denying relief. It appears from the record on appeal that Rogers did not file this affidavit below, though he did detail at length in his postconviction motion what Dr. Zivot would testify to based on his preliminary evaluation of Rogers. Regardless, because the affidavit is not part of the record on appeal, we sustain the State's objection to it.

12. At the outset, Rogers argues that this Court's decisions in *Long v. State*, 271 So. 3d 938 (Fla. 2019), *Correll v. State*, 184 So.

As for timeliness, Rogers argues that the facts underlying his method-of-execution challenge based on his porphyria diagnosis meet the exception in rule 3.851(d)(2)(A) that "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." He also argues that he could not raise this claim sooner because he could not know what execution procedures would be in place until his death warrant was signed.

We disagree. We have generally held that method-of-execution claims are procedurally barred unless the method itself changes or new facts about the current method arise during a prior execution. *See Schwab v. State*, 969 So. 2d 318, 321 (Fla. 2007) (holding that Schwab's method-of-execution claim was not procedurally barred because it was "based primarily upon facts that occurred during a recent execution" that "did not exist when lethal injection was first

3d 478 (Fla. 2015), *Henry v. State*, 134 So. 3d 938 (Fla. 2014), *Howell v. State*, 133 So. 3d 511 (Fla. 2014), and *Davis v. State*, 142 So. 3d 867 (Fla. 2014), require relinquishment of jurisdiction to the circuit court with instructions to hold an evidentiary hearing on his as-applied claim and a stay to afford time to conduct a full and fair hearing. These decisions in no way stand for that legal proposition.

authorized"). Rogers argues neither exception. Instead, as the postconviction court found, he acknowledged below that Florida's lethal injection protocol "is not materially different than the previous March 2023 protocol or the protocol that has been in effect since 2017." Also, as the lower court found, Rogers could have but did not raise this claim in a prior motion.

Further, this Court has recently rejected the argument that a method-of-execution challenge only became ripe when a death warrant was signed. *See Cole*, 392 So. 3d at 1064 (affirming the circuit court's denial for untimeliness because the defendant "failed to raise any argument related to the method of execution until after the Governor signed a death warrant"). And we very recently affirmed the denial of a similar method-of-execution challenge as untimely made after the signing of a death warrant. *See Tanzi v. State*, 50 Fla. L. Weekly S59, S60-61, 2025 WL 971568, at *4 (Fla. Apr. 1, 2025) (affirming the circuit court's denial of an untimely as-applied challenge because the defendant's medical conditions were present well over a decade before the signing of the death warrant), *cert. denied*, No. 24-6932, 2025 WL 1037494 (U.S. Apr. 8, 2025). Rogers' claim is similarly untimely.

We also agree with the postconviction court that Rogers' claim is meritless. As already noted, successfully challenging a method of execution requires that a defendant "(1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017) (citing *Glossip v. Gross*, 576 U.S. 863, 877 (2015)). Under the first prong, the question is not merely whether any pain is inflicted, for "the Eighth Amendment 'does not demand the avoidance of all risk of pain in carrying out executions.' " *Bucklew v. Precythe*, 587 U.S. 119, 134 (2019) (quoting *Baze v. Rees*, 553 U.S. 35, 47 (2008)). Rather, the Eighth Amendment "come[s] into play" when "the risk of pain associated with the State's method is 'substantial when compared to a known and available alternative.' " *Id.* (quoting *Glossip*, 576 U.S. at 878).

We agree with the postconviction court that Rogers cannot satisfy the first prong. Rogers speculates that when etomidate is administered, the drug *could* induce a porphyria attack and create a substantial risk that Rogers will suffer from extreme and

- 23 -

excruciating abdominal pain, tachycardia, hypertension, nausea, vomiting, and seizures. But this Court has repeatedly upheld Florida's lethal injection protocol, including the etomidate protocol. *See Tanzi*, 50 Fla. L. Weekly at S61, 2025 WL 971568, at *4 (upholding Florida's etomidate protocol); *Cole*, 392 So. 3d at 1065 (noting that the "etomidate protocol . . . includes safeguards to ensure the condemned is unconscious throughout the execution"); *Long*, 271 So. 3d at 945-46 ("[W]e have repeatedly affirmed the summary denial of challenges . . . to the use of etomidate as the first drug in the protocol."). And Rogers does not explain how his speculative porphyria attack overcomes the well-established fact that the administration of etomidate will render him unconscious likely within one minute. *See Asay*, 224 So. 3d at 701 ("Intravenous injection of etomidate produces hypnosis characterized by a rapid onset of action, usually within one minute." (quoting the drug insert for etomidate)); *see also Davis*, 142 So. 3d at 872 (affirming the denial of an as-applied lethal injection claim "because Dr. Zivot failed to demonstrate that the injection of midazolam, as the first drug in the lethal injection

protocol, would not render Davis unconscious and insensate prior to him experiencing any possible symptoms of a porphyria attack").

Even if Rogers could satisfy the first prong, we agree with the postconviction court that he has failed under the second prong to "identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay*, 224 So. 3d at 701 (citing *Glossip*, 576 U.S. at 877). In *Tanzi*, we recently rejected Rogers' two proposed alternatives, lethal gas or firing squad, because Tanzi failed to show "how either of his two proposed alternate methods . . . could be 'readily implemented,' or in fact significantly reduce[] the substantial risk of severe pain, given the physical conditions he describes.' " 50 Fla. L. Weekly at S61, 2025 WL 971568, at *4.[13] Rogers, likewise, fails to make this showing.

Accordingly, we affirm the postconviction court's summary denial of Rogers' method-of-execution claim.

---

13. Rogers also argues that the second prong of this test, as outlined in *Glossip*, is morally repugnant, impossible to realistically meet, and violative of his due process and equal protection rights. However, this Court has no authority to overrule Supreme Court authority. *See generally Poole*, 297 So. 3d at 507 ("In a case where we are bound by a higher legal authority—whether it be a constitutional provision, a statute, or a decision of the Supreme Court—our job is to apply that law correctly to the case before us.").

## III. Conclusion

We affirm the summary denial of Rogers' fourth successive motion for postconviction relief. We also deny his motion for stay of execution and request for oral argument. No petition for rehearing will be entertained by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

An Appeal from the Circuit Court in and for Hillsborough County,
    Michelle Sisco, Judge
    Case No. 291995CF015314000AHC

Eric Pinkard, Capital Collateral Regional Counsel, Ali Shakoor, Assistant Capital Collateral Regional Counsel, and Adrienne Joy Shepherd, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

James Uthmeier, Attorney General, Tallahassee, Florida, Christina Z. Pacheco, Senior Assistant Attorney General, Stephen D. Ake, Senior Assistant Attorney General, and Jonathan S. Tannen, Assistant Attorney General, Tampa, Florida,

    for Appellee